This is a suit filed by Joseph Shumaker and his wife, Mrs. Pinkie Endom Shumaker, plaintiffs herein against robert Plain and Carnes B. Evans, in which plaintiffs are seeking damages for personal injuries and property damage as the result of a collision between the automobile of the plaintiffs and a truck-trailer owned by the defendant, Carries B. Evans, and driven by Robert Plain, which occurred at the intersection of the extension of Florida Street and Foster Drive in East Baton Rouge Parish, Louisiana on November 3rd, 1945 between seven and seven-thirty P. M.
Plaintiffs allege that the collision and resuiting damages to them were due entirely to the negligence, recklessness and want of care of the defendant, Robert Plain, which consisted particularly of the following:
"A. In attempting to make a left turn on a busy highway without first ascertaining, which was his duty and responsibility, that such turn could be made in safety to himself and others,
"B. In failing to yield the right-of-way as is required by law to such traffic as would be affected or delayed by such a left turn.
"C. In turning the said truck and semi-trailer so suddenly into your petitioners' path, that petitioner, Joseph Shumaker, did not have sufficient time to bring his car to a halt."
Plaintiffs further allege that as a result of the accident Joseph Shumaker suffered personal injuries and property damage, hospital, doctors' and nurses' bills for himself and wife, traveling expenses and ambulance expenses, all of which total $3670.50, and that Mrs. Pinkie Endon Shumaker, his wife, suffered damages consisting of permanent disability, pain and suffering in the total sum of $20,000.00, and prays accordingly for judgment in these amounts, in-solido, against the defendants, together with legal interest on both amounts with judicial interest until paid.
Defendants in their answer charge that the sole and proximate cause of said accident was the gross negligence on the part of the plaintiff, Joseph Shumaker, in:
(1) Driving his said automobile at a dangerous and unlawful rate of speed of over seventy miles per hour;
(2) Traveling at such terrific rate of speed that just prior to, and at the moment of the collision, his said automobile was out of control;
(3) Failure on the part of the said plaintiff, Joseph Shumaker, to see said truck, which was plainly visible, with all lights burning brightly.;
(4) Failure on the part of the plaintiff, Joseph Shumaker, to apply his brakes and avoid said collision;
(5) Failure on the part of the said plaintiff, Joseph Shumaker, to pass to the left of the rear of said semi-trailer, which lane of traffic was entirely clear;
(6) Driving his said automobile while under the influence of liquor to such an extent as to render him incompetent to operate his said automobile, all of which said acts of negligence respondents show that plaintiff, Mrs. Pinkie E. Shumaker, acquiesced in, and respondents have been informed *Page 871 
and believe, and therefore aver, that the said plaintiff, Mrs. Pinkie E. Shumaker, did not make any protest against said acts by plaintiff, Joseph Shumaker.
Defendants filed a supplemental answer amending Paragraph 33 of the original answer on the day the case was called for trial, the amendment to said Paragraph 33 being underlined herein:
"Respondents have been informed and believe, and so believing aver that when the plaintiff, Joseph Shumaker, reached the said intersection, and that for a considerable distance back from the same, he was driving his said automobile, with the knowledge and consent of his wife, plaintiff Mrs. Pinkie E. Shumaker, at an excessive and dangerous rate of speed of more than seventy miles per hour, in violation of the Louisiana Highway Regulatory Law, and that before reaching said intersection the truck and semi-trailer of respondent Evans was plainly visible to him and Mrs. Shumaker as all of the front, rear and side lights on said truck and semi-trailer were in good working order, and were burning, but that nevertheless he failed to reduce his speed or apply his brakes, but on the contrary said plaintiff, Joseph Shumaker, continued straight on and crashed into the rear portion of said semi-trailer. Thatthe petitioner Mrs. Pinkie E. Shumaker acquiesced in all thenegligent acts of her said husband set forth in this answer,and that she was guilty therefore of such contributorynegligence that would bar her rights to recover.
The plaintiff objected to the filing of this supplemental answer on the ground that the original answer "does not set up any plea of contributory negligence as far as Mrs. Shumaker is concerned; the supplemental answer is filed the day of the trial and it definitely changes the issues." This objection was overruled for the reason that "in the opinion of the Court the original answer does set forth specific contributory negligence, which could be so held, and in overruling the objection to the filing of the supplemental answer, the Court advised counsel for plaintiff that if he was taken by surprise a continuance would be granted."
[1] We are of the opinion that the original answer set up a state of facts which, if proven, would constitute contributory negligence on the part of the plaintiffs without the amendment as set forth in the defendants' supplemental answer.
The case was duly tried and the Court in its written opinion held "that this accident resulted solely because of the negligence of Mr. Shumaker and that the driver of the truck-trailer was free from any negligence," and accordingly judgment was rendered dismissing plaintiffs' suit at their cost. Plaintiffs have appealed from this adverse judgment.
The facts in this case as revealed by the record show that the plaintiffs were residents of Baton Rouge, Louisiana and that on November 3rd, 1945 they had attended the Tulane-Mississippi State football game in New Orleans and had left immediately after the game for Baton Rouge where they expected to pick up their young son at their home and then attend the L. S.U. — "Ole Miss" game which was scheduled to begin at 8:15 P.M. Joseph Shumaker was driving his 1941 Chrysler Coupe and had come as far as the circle on the outside of Baton Rouge on the Airline Highway and had turned there into the Florida Street Extension.
Plaintiff testified on Page 14 as follows:
"Q. You say you were going about forty-five — A. I was going between forty-five and fifty. I knew there was a cross road there, I travel that road a lot, and I showed down for the cross road and I didn't see anything coming and I shot the juice to it. I imagine I slowed down to thirty-five or forty — and I didn't see anything coming and I shot on across.
"Q. What happened then? A. It happened so fast I could not tell you what I hit or anything else, only thing I knew, like that wall, looked like something black in front of me and it was so big I turned left as far as I could, it was so big I could not miss it.
"Q. You mean the whole entire place was covered? A. Yes, sir, just like a wall in front of me.
"Q. You pulled as far as you could to your left? A. Yes, sir, if it had been an *Page 872 
ordinary car I would have missed it, but being a truck as big as it was, I could not miss it. I didn't know what I hit until I got to the hospital.
"Q. You slowed down? A. I always slow down. I use to live in Gonzales and I saw a wreck at a road like that and I stopped for that wreck and every time I get to a cross road I slow down for it, I don't care whether I got the right of way or not.
"Q. Was anybody between your car and this truck? A. No, sir.
"Q. Your way was clear to the left? A. Yes sir, wasn't anybody in front of me.
"Q. Prior to that where were you traveling? A. I was traveling on the right hand side.
"Q. Could you have stopped after you saw this truck? A. Had not a chance at all, Judge, I could not stop.
"Q. To what extent were you injured? What injury did it do to your automobile? A. Total wreck. I think I sold it for junk, about $360.00."
Plaintiff, under cross examination, admitted that he did not see the truck until he was about fifteen or twenty feet from it but that there was nothing to obstruct his view; he further admits that he was increasing his speed at the time he hit the truck. Plaintiff testified that there was a sign which says "Cross Roads" just before you get to Foster Drive, and that is where he slowed up, and he estimates the distance of this sign from Foster Drive as sixty feet, however, a measurement as shown by the record proves this cross roads sign to be 546 feet from Foster Drive.
Mrs. Shumaker testified that her husband had been driving all the way from New Orleans at approximately not over forty-five miles per hour; that after they passed the circle, she turned on the radio and was interested in the news and that she didn't remember anything about the collision until two weeks afterward.
The plaintiff also introduced the testimony of Mr. and Mrs. Floyd Booth who followed the plaintiffs in their automobile from the circle until the accident occurred. They testified that they ran about 150 feet behind the Shumaker car and that they were traveling approximately around 55 miles per hour; that Shumaker was driving correctly with his lights burning, and just before the wreck Mr. Booth saw two lights start across the road and that at this time the Shumaker car was not over thirty feet from the truck. He testified that the car "shot out" from the side street and came across from the south; that the only thing he saw Shumaker do was pull to the left "a little bit", and that he did not think there was room enough for the Shumaker car to have passed to the left or rear of the truck-trailer, and that the truck-trailer, when he saw it, was moving and had already crossed the neutral ground to the north side of the Florida Street Extension. Mrs. Booth corroborated her husband's testimony except that she did not see the truck before the collision.
The testimony offered on behalf of the defendants reveals that on the date of the accident defendant Carnes B. Evans rented his 1940 Model Ford truck and semitrailer to Delta Beta Sigma Sorority, which is a social sorority at the Baton Rouge High School. The members of this sorority, together with some friends, were going on a hayride and picnic to Magnolia Beach in Fast Baton Rouge Parish. The young people were to be chaperoned by Mr. and Mrs. Niles P. Evans, no relation to the defendant Carnes B. Evans, who had daughter in the truck, and also by Mrs. H.L. Lehman, who was sorority mother at the time, and by Mr. and Mrs. L.C. Kenyon. Prior to the time the truck went to the Baton Rouge High School to pick up the children, it was serviced at Kirt's Esso Service Station, which is located on the Scenic Highway and Choctaw Road in Baton Rouge, by C.L. Sanders, an employee, who testified that he had checked the truck as to brakes, lights, gas and oil, and that Evans, the owner of the truck, was in the habit of sending the truck over for a complete check-up before it was sent on the road. He testified that he checked the lights and that the front, rear and side lights were all burning, and that the truck had reflectors on the side. When the truck picked up the young people, numbering approximately *Page 873 
seventy-five girls and boys, Mr. Niles P. Evans rode in the truck with the driver, Robert Plain, and David Evans, twelve year old son of the defendant, Carnes Evans. The truck was followed by two automobiles. In the first automobile was Mrs. H.L. Lehman and Mrs. Niles Evans, and it was being driven by Mrs. Lehman. This car followed directly behind the truck, and behind it was an automobile occupied by Mr. L.C. Kenyon and Mrs. L.C. Kenyon and being driven by Mr. Kenyon.
The evidence proved beyond any doubt that Robert Plain, the driver of the truck, proceeded east along Florida Street Extension in a most careful manner at a speed of approximately twelve to fourteen miles per hour until reaching a point where Foster Drive crosses the Florida Street Extension. He held out his hand and stopped and saw two car lights in the west bound north lane of traffic of the Florida Street Extension about four-tenths of a mile away. He then turned to his left into Foster Drive with the intention of crossing the extension of Florida Street and proceeding north along Foster Drive. He came to a bare stop in the Neutral ground and looked to his right again as also did Mr. Niles P. Evans, who was riding in the cab of the truck. Both testified that there was no doubt in their mind that they had plenty of time to continue on across the north lane of traffic on the extension of Florida Street as the cars at that time were one-fourth or three-tenths of a mile away. All of the front portion of the truck was completely across the north lane of the Florida Street Extension, and the rear wheels under the semi-trailer had also crossed the center line of the north lane of Florida Street when the plaintiff's car struck the rear end of the semi-trailer at a point on the right rear outside wheel thereof. The testimony shows that the plaintiff's car struck dead center with the rear axle under the semi-trailer. As a result of the accident, plaintiff's car was completely demolished, showing a direct blow to the front end of the car and the left rear dual wheels under the semi-trailer, and all but fifteen inches of the rear axle was knocked a distance of seventy-five to eighty feet from the trailer, and the right rear dual wheels were knocked approximately twenty-five to thirty feet from the semitrailer, and the impact knocked the semitrailer around at an angle to the cab of the truck. It is shown that the weight of the trailer was 7500 pounds, and the weight of the rear axle and wheels which were knocked seventy-five or eighty feet totalled approximately 600 pounds.
The car of the plaintiff came to rest at a point marked "F" on the map introduced in evidence, which is just north of the center line of the north lane of the Florida Street Extension. All lights were burning, front, sides and rear, on the truck and semi-trailer and there was, therefore, no reason or excuse for the plaintiffs not to have seen this truck, which measured twenty-nine feet four inches over all, with the height of the body from the floor to the top of six feet. Furthermore, the truck had pre-empted the intersection, which it had a right to do under the law. In fact, there was only thirty inches of the semi-trailer portruding over the center line of the north or right hand lane of traffic of the Florida Street Extension at the time of the accident and clearly plaintiff could have passed to the rear of the semi-trailer, even though possibly he might have had to use part of the neutral ground, which is thirty feet eight inches wide, between the north and south lane of Florida Street Extension. The so-called curb of the neutral ground is even with the pavement.
[2] There is no doubt that the proximate and sole cause of this accident was the failure of the plaintiff, Joseph Shumaker, to maintain a proper look-out, and the excessive rate of speed at which he must have been driving at the time of the collision.
[3] Defendants were within their rights under the facts in this case in attempting to cross Florida Street Extension, as they only had to wait until there was a reasonably safe opportunity to cross, which they did. Simpson v. Pardue, 15 La. App. 341, 131 So. 854; Reed v. Kraak, 11 La. App. 555, 123 So. 407; Fontanille v. Ducote, La. App., 155 So. 46, 47. We are convinced from the evidence that Robert *Page 874 
Plain, driver of the truck and semi-trailer was not guilty of any negligence whatsoever and are therefore of the opinion that the judgment of the District Court should be affirmed and it is so ordered.