THOMAS C. WICKER, Jr., Judge Pro Tern.
This appeal arises from a judgment in favor of plaintiff, Barbara Eaglin and against defendants, Charles George and his insurer State Farm Mutual Automobile Insurance Co., for personal injuries suffered by Mrs. Eaglin in a two car collision. Mr. George was found solely negligent in the accident and the trial court awarded Mrs. Eaglin a total award of $5,781.00 as com *465 pensation for her injuries, including $781.00 for special damages. We affirm.
On March 4, 1983, at approximately 6:00 p.m., Mrs. Eaglin’s vehicle collided with Mr. George’s truck as he attempted to cross an intersection. The accident occurred as Mrs. Eaglin was driving eastward on the inside lane of E. Broad Street, which is a favored four lane thoroughfare intersecting with the South exit ramp of Interstate 1-210. A stop sign was placed at the intersection to control traffic exiting from the interstate. Immediately prior to the collision Mr. George approached E. Broad St. from the interstate and stopped his car at the stop sign. After looking in both directions for on-coming traffic, he then proceeded into the intersection with the intent of turning left, or westward. Before he could fully complete the maneuver, his truck was struck on the driver’s side by Mrs. Eaglin’s car. Mrs. Eaglin’s car was extensively damaged and she received injuries to her mouth, neck, arms, right leg and left knee.
Subsequently, Mrs. Eaglin filed suit against Mr. George and his insurer, State Farm, to recover compensation for her injuries. Following trial of this matter the judge rendered a judgment in her favor.
In the appeal to this court Mr. George asserts that the trial judge erred in finding him at fault, in that he failed to consider the testimony of the only eyewitness to the accident; that the trial judge failed to apply the doctrine of comparative negligence; and that the trial judge awarded Mrs. Eag-lin an excessive amount for her injuries.
With regard to the allegation that the trial judge failed to give sufficient weight to the testimony of Cecil Shrews-berry, whose automobile was behind Mr. George when the accident occurred, it is contended that his testimony contradicts Mrs. Eaglin’s claims that the area was well lit, and that her headlights were turned on because of the weather conditions when the collision occurred.
In reviewing factual findings of the trial court when the testimony is conflicting, the appellate court will not disturb the fact finder’s reasonable assessment of the credibility of witnesses, nor will the reviewing court disturb the factual findings in the absence of manifest error. Canter v. Koehring, 283 So.2d 716 (La.1973). In evaluating testimony, the trial court is in the best position to weigh the testimony of conflicting witnesses, since it is able to observe first-hand, the demeanor of the witnesses. As the matter of credibility is within the province of the trial court, the fact finder is entitled to accept the plaintiff’s version of events over that of the defendant. Boyett v. Ingram, 419 So.2d 988 (La.App. 5th Cir.1982).
The facts, herein, show that the accident occurred on a rainy evening at approximately 6:00 p.m. Mrs. Eaglin stated that her headlights were on because of the weather conditions, although it was not totally dark. She testified, as did her husband who arrived on the scene shortly after the accident, that the area received some illumination from various businesses located along the highway. Mr. George, the investigating officer and Mr. Cecil Shrews-berry stated conversely that when the accident occurred, it was dark due to the weather and the time of day.
Mr. Shrewsberry, Mr. George’s eyewitness, testified that he was traveling directly behind Mr. George, that he saw Mr. George stop at the intersection, and that he watched as Mrs. Eaglin’s car struck Mr. George’s truck. Both he and Mr. George asserted that Mrs. Eaglin’s lights were not on when the collision occurred. Because of this omission, Mr. George stated that he did not see Mrs. Eaglin before the actual collision.
In reviewing Mr. Shrewsberry’s testimony we find that he also admitted that his view of the traffic flowing from Mrs. Eag-lin’s direction of travel was severely impaired. He informed the court that his view would only have been unimpeded when he stopped at the stop sign. This testimony, coupled with his admission that he did not see Mrs. Eaglin’s car until the impact, diminishes the assertion that Mrs. *466 Eaglin’s lights were not on, which fact, Mr. George argues, is the contributing or sole cause of the accident. The trial judge, in reasons for judgment chose to believe Mrs. Eaglin’s version and concluded that Mrs. Eaglin’s lights were on despite Mr. Shrews-berry’s testimony. We find that the trial court was not manifestly erroneous in this conclusion considering the testimony.
The second issue presented by Mr. George is that the trial judge erred in failing to apply comparative negligence. In support of this assertion he argues that the facts show that Mrs. Eaglin was traveling at an excessive rate of speed for the weather conditions.
L.S.A.-R.S. 32:123 provides, in pertinent part, that:
B) ... every driver and operator of a vehicle approaching a stop intersection indicated by a stop sign shall stop before entering ... After having stopped, the driver shall yield the right of way to all vehicles ... which are approaching so closely on said highway as to constitute an immediate hazard.
In making a determination of fault in intersection collisions controlled by a stop sign, the jurisprudence holds that the motorist crossing an intersection must not only stop in obedience to the stop sign, but must only proceed when it is safe to do so. Ageous v. Allstate Ins. Co., 442 So.2d 812 (La.App. 4th Cir.1983). The duty to proceed safely from a stop sign mandates that the motorist see what he should have seen with the exercise of due diligence. Audubon Insurance Co. v. Knoten, 325 So.2d 624 (La.App. 4th Cir.1976); Baach v. Clark, 442 So.2d 514 (La.App. 5th Cir.1983), writ denied 447 So.2d 1067 (La.1984). More definitively, he is required to see a vehicle which is traveling on a favored street as it approaches his position. Tillman v. Massey, 445 So.2d 749 (La.App. 4th Cir.1984), writ denied 446 So.2d 743 (La.1984).
Mrs. Eaglin testified that she was traveling at approximately 30-35 miles per hour and that the street was wet since it had been raining periodically all day. She stated that she was in the lane of travel farthest from the stop sign located at the interstate exit when the accident occurred. Mrs. Eaglin claimed that when she reached the intersection, Mr. George’s truck “shot out” in front of her so quickly that she first saw him only seconds before she struck his vehicle. She also related that her vision on approaching the intersection was at least one and a half miles, and that she did not see his vehicle stopped at the intersection. Contrary to the testimony of Mr. George, Mrs. Eaglin asserted that Mr. George’s headlights were not turned on when he crossed her path of travel.
In concluding that Mr. George was solely at fault in the accident, the trial judge correctly noted that Mrs. Eaglin’s statement that the accident occurred so suddenly that she was unable to prevent or avoid the collision, was consistent with the testimony of Mr. George and the eyewitness. In addition, Mr. George admitted that he was able to see objects at a distance of 200 feet as he looked in Mrs. Eaglin’s direction when he was stopped at the stop sign. Those facts convinced the judge that Mrs. Eaglin’s speed was not a relevant factor in the accident. He pointed out that she was driving in a proper fashion with no reason to expect that a car would dart in front of her vehicle. Thus, the trial judge concluded that Mr. George failed to see what he should have seen. Since Mr. George failed in his duty, his act was therefore the sole cause of the accident. After reviewing the testimony, we find that the trial judge was not clearly wrong in his factual finding, thus precluding the application of the doctrine of comparative negligence.
In his final specification of error, Mr. George complains that the award to Mrs. Eaglin for her injuries is excessive under the facts. He asserts that Mrs. Eag-lin’s injuries primarily consisted of a soft tissue injury which was resolved shortly following the accident, and thus does not warrant an award of $5,000.00.
In reviewing the amount of damages awarded by the trial court, the appellate court must first inquire whether the award *467 for the particular injuries and their effect upon the injured person was a clear abuse of the fact finder’s “much discretion.” Only after an articulated analysis of the facts discloses an abuse of discretion may the award, for stated reasons, be considered excessive or insufficient. When an abuse of discretion is found, the appellate court is limited in disturbing the award only to the extent of lowering it or raising it to the highest (or lowest) point which is reasonably within the discretion afforded the judge or jury. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
Mrs. Eaglin testified that the impact threw her body to the left and then to the right causing her to injure her mouth, neck, arm and hip. Immediately after the accident she was examined in the emergency room of a local hospital where she received stitches in her upper lip. The emergency room physician referred her to her family physician, Dr. Delmacio Parguya, an internist who examined Mrs. Eaglin a few days after the accident. Dr. Paraguya’s examination revealed multiple contusions and soft tissue injuries in her shoulders, neck, arms and right leg. He prescribed Mortin and Tylenol. On March 14, 1983, Mrs. Eaglin returned to his office complaining of headaches in addition to her initial complaints. She was given a prescription for Soma (a moderate muscle relaxant), and told to continue taking the Tylenol. Mrs. Eaglin was seen again by Dr. Paraguya on March 22, 1983 at which time her symptoms were still troublesome. The doctor prescribed a new medication, Fiorinal # 3, and instructed her to return as needed. She did not return until September 5, 1984, at which time she was complaining about headaches, pains in her shoulders, and occasional pain in her knee joints.
Dr. Paraguya testified that he did not feel that her complains warranted a referral to an orthopedic doctor. However, he further stated that Mrs. Eaglin was not malingering, and that he could not project how long her symptoms would persist.
Following the initial visits with Dr. Par-guya, Mrs. Eaglin was treated by Dr. Rodney V. Floyd, D.C. and Dr. Peter Brosnan, D.C. Dr. Floyd examined Mrs. Eaglin on May 2, 1983. His diagnosis was a cervical/trachial syndrome and lumbro-sacral compression. Mrs. Eaglin was treated by Dr. Floyd for four or five months. In June, she stated she was better. In July 1984, the doctor moved out of state and referred his cases to Dr. Brosnan.
Dr. Brosnan first treated Mrs. Eaglin in September 1984 for headaches, and pain' in neck, shoulder and knees. His examination revealed positive muscle spasm when sitting, as well as pain in shoulders. It was his opinion that there was muscle involvement in Mrs. Eaglin’s injuries, and possible nerve root irritation. A spinal x-ray taken by Dr. Brosnan indicated a functional unit displacement with a right compensatory thoracic curve. The instability in the spinal column was complicated by pelvic drop and rotation, and he observed a forward springing of the spinal column with concurrent loss of normal lumbar curve.
Dr. Brosnan saw Mrs. Eaglin 21 times from September to October 19, 1984. His treatment consisted of heat therapy, electrical stimulation, and manipulation to restore normal function and movement to the spinal column. At the time of trial she was still his patient. He stated her progress was intermittent and that her problems were not resolved. Dr. Brosnan also stated that at the time of trial, she was approaching maximum medical improvement. He concluded that Mrs. Eaglin’s injury would require six to twelve more months to heal.
Mrs. Eaglin testified that she was employed at South Central Bell Telephone Company as a directory assistance operator, a job which requires her to answer calls in a sitting position. She and two of her co-workers, Ms. De Blanc and Ms. Wiley, asserted that she has been unable to sit during the entire duty periods since the accident, but must frequently stand or kneel in a chair to answer her calls because of pain. Although she takes her required *468 rest breaks, the witnesses stated she also leaves her work area occasionally to relieve her discomfort.
In addition to her discomfort at work, Mrs. Eaglin testified that she is unable to participate in horseback riding, her primary recreation. She stated that when she attempts to ride she has pain in her back and neck and suffers headaches. Her co-workers and her mother, Mrs. Simien, supported her testimony in this regard.
After reviewing the evidence of Mrs. Eaglin’s injuries we find that she has suffered and continues to suffer pain while working; that she is unable to pursue her favorite recreational activity; and that she continues to require treatment from the chiropractor. Considering these facts, we find that the trial judge did not abuse his discretion in awarding Mrs. Eaglin $5,000.00 in general damages out of a total award of $5,781.00.
Accordingly, the judgment of the trial court is hereby affirmed. Costs are to be paid by appellant.
AFFIRMED.