819 So.2d 1114 (2002)
Jeanette C. PLOGER, Wife of/and Dr. Wilmot Ploger
v.
William D. REESE and Allstate Insurance Company.
No. 2001-CA-2243.
Court of Appeal of Louisiana, Fourth Circuit.
May 22, 2002.
*1115 Lawrence D. Wiedemann, Wiedemann & Wiedemann, New Orleans, LA, for Plaintiff/Appellee.
Coleman T. Organ, Law Offices of Harold G. Toscano, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge MIRIAM G. WALTZER and Judge DENNIS R. BAGNERIS, SR.).
MIRIAM G. WALTZER, Judge.

STATEMENT OF THE CASE
On 1 May 2000, Jeanette C. Ploger and her husband, Dr. Wilmot Ploger sued William D. Reese and his insurer, Allstate Insurance Company, for damages allegedly sustained on 7 May 1999 as a result of the collision between a 1979 Pontiac driven by Mr. Reese and a 1997 Mercedes driven by Mrs. Ploger. According to the petition, Mr. Reese suddenly and without warning made a left hand turn whereupon his car struck the Mercedes violently on the left side.
Mrs. Ploger claimed injury to her back, a cerebral concussion, multiple contusions and abrasions and injuries to both her knees, and sought damages for pain and suffering, medical expenses, loss of earning capacity, loss of physical function, disfigurement and loss of ability to enjoy life. Her husband sought damages for loss of *1116 consortium, services and spousal community.
Allstate answered, generally denying the allegations contained in the petition and claiming that Mrs. Ploger was at fault. Allstate asked for trial by jury. An unsigned jury order filed 12 June 2000 appears in the record.
On 13 June 2001, the matter was tried to the trial judge, who rendered judgment for plaintiffs on 13 September 2001. The court awarded Mrs. Ploger general damages in the amount of $40,000; medical expenses in the amount of $1,635 and lost wages in the amount of $2,000. It awarded Dr. Ploger $5,000 for loss of consortium. The award was made subject to the non-jury stipulation of value under $50,000.
Allstate and Reese appeal from the judgment. We affirm.

STATEMENT OF FACTS
Defendants stipulated to Mr. Reese's fault and liability for the accident, and that plaintiffs' damages do not exceed $50,000 exclusive of interest and costs, while reserving their right to litigate the issues of causation and damages. Allstate stipulated to insurance coverage in the amount of up to $500,000.
Mrs. Ploger testified that she is sixty years old, a licensed but not practicing registered nurse, married for thirty-seven years to her husband, an orthopedic surgeon, with three adult daughters. She testified to a total estimate of vehicular damage in the amount of $6,774.55, which had been paid by Allstate.
She testified that following the accident, she began to feel pain in her left hip and left knee and neck pain shooting across her shoulders later in the afternoon. Prior to the accident, in 1983, she had had a cervical fusion but was pain free prior to the accident, although she did experience some stiffness in her neck. In 1998, she underwent surgeries by Dr. Robert Shackleton for the removal of the synovioma linings in her left and right knees. She had no symptoms following the knee surgeries, although she admitted on cross-examination that she had been diagnosed prior to the accident with osteoarthritis of both knees. She testified that after these surgeries, but prior to the accident, she was able to travel and do the things she wanted to. She testified that by 1999, she "felt great" and was on her way to total recovery.
In the accident, her left knee hit the steering column, resulting in numbness for about six months. Several days after the accident, she consulted Dr. Shackleton and began taking Advil, daily dosage of Celebrex, and, on occasion, Loritab for pain. He sent her to physical therapy for her neck, shoulders, back and legs. There were a total of nine visits to the physical therapist from 11 May 1999 through 23 July 1999. Because of continuing pain in her neck, shoulders, hip and knee, Mrs. Ploger had two additional therapy sessions from 1 October 1999 to 15 October 1999.
Mrs. Ploger testified that for seventeen years prior to the accident she worked part-time as a tour guide, freelance and for USA Host, giving walking tours of the French Quarter and coach tours of nearby swamps and plantations. She worked at the airport with incoming groups, working long hours. She was unable to do so while undergoing physical therapy. Furthermore, following the accident, she was unable to stand for long periods of time or to work long hours as she had done previously. She testified to problems getting on and off the tour busses, negotiating stairs, and with lack of stamina. Following the accident, she was able to work only half the hours she had worked previously, chiefly taking desk jobs and swamp tours where she was able to sit. She was unable to take walking tours or any job that required *1117 climbing steps. She testified to a pre-accident annual income from her part-time job of between $5,000 and $7,000. She presented tax forms from USA Host in the amounts of $2,248 for the year 2000, and of $3,377.75 for 1999. There was no economic reason for the reduction in her income for those years.
Mrs. Ploger testified that her injury caused her to be unable to take care of her four grandchildren in the way she had prior to the accident. Lifting the children hurts her, putting extra strain on her neck and shoulders, and she testified that when she is unable to pick up the children, they sit on the floor and cry. As a result, she does not see or care for the grandchildren as often as she did prior to the accident. She can no longer climb ladders or clean windows in her home and does not have the stamina to work around the house as she once did. Dr. Ploger has had to take over many chores, including washing dishes and some cooking.
According to Mrs. Ploger, when she rises in the morning she is very stiff and it takes her awhile to move. She cannot sit for prolonged periods of time without hurting her hip, and she has problems with her left hip when traveling or riding in a car. She is no longer able to continue her pre-accident practice of walking three miles each day. On cross-examination, she admitted that since the accident, she has traveled in discomfort on mostly pre-planned trips to Eastern Europe, France, Egypt and Russia.
Prior to the accident, she and Dr. Ploger traveled quite a bit but she now is unable to sit for prolonged periods and cannot walk as much as they used to. She has curtailed travel plans as a result of the injury. She testified to being emotionally frustrated with the effects of the accident, particularly since she had recovered from the previous neck and knee surgeries by 1999. She described her disposition following the accident as irritable and not as even-tempered as before. She is unable to sleep at night, and this also causes her husband to remain awake. She testified that prior to the accident, she and Dr. Ploger had normal sexual relations; however, her hip and knee pain have taken away her desire to have such relations. Although she loves to dance, she cannot do so now without hip pain.
Mrs. Ploger testified that she was unable to continue her anti-inflammatory medication because of gastro intestinal problems that began in April while she was taking Celebrex for her pain. She has engaged a private trainer at Elmwood Fitness Center to work on strengthening her neck, hip and knee muscles. She has paid Elmwood Fitness nearly $800 for his services over a three-month period and expects to continue the engagement.
Following the accident, and in an effort to alleviate the shoulder and neck pain she was suffering, Mrs. Ploger consulted Dr. Kenneth M. Dieffenbach, a plastic surgeon, in April 2000 and underwent breast reduction surgery. She testified that although she had always been large-breasted, she had never considered this type of surgery until after the accident. She testified that although not all the pain has been taken away, the surgical removal of some weight had helped her neck. On cross-examination she denied any claim that she underwent the breast reduction surgery because of the accident in question.
On cross-examination, Mrs. Ploger testified to an accident that occurred in June 2000 in which her right knee was injured, but she testified that she has not continued to see a physician as a result of that accident. She was not diagnosed with any hip problem prior to the accident in question, and produced the report of a normal MRI of her left hip performed in June 1998.
*1118 Dr. Ploger confirmed Mrs. Ploger's testimony concerning her pain after the accident, her physical limitations after the accident, attribution of her condition to the accident and the effect of the accident on their daily life together.
Dr. Robert Shackleton, a board-certified orthopedist in practice in metropolitan New Orleans since 1983, testified that he is in practice with Dr. Ploger and has seen and treated Mrs. Ploger. He performed the 1994 cervical surgery and the 1998 knee surgeries. His last pre-accident entry concerning Mrs. Ploger's neck problem was made on 23 March 1994. His treatment of her knee problem commenced with a note of 16 September 1997 and concluded that she was "overall better" on 14 January 1998 or 1999. On 22 April 1999, Dr. Shackleton noted that she was going to continue a home program to help with discomfort in her right knee. As of 22 December 1998, she had no difficulties with her left knee.
He next saw Mrs. Ploger four days after the accident in question, on her complaint that she had hit her left knee and had pain in the sternum, neck and upper back, and found it hard to make herself comfortable and sleep. She had not complained of neck pain since 1994, and had no prior back complaints. Dr. Shackleton confirmed Mrs. Ploger's testimony concerning his treatment and prescription of medications. He testified that he saw her shortly after the 21 June 2000 accident, in which she hit her right knee on the automobile's console, leaving some soreness in her knees, chest, neck and shoulders. However, the complaints apparently did not increase or continue since he did not see her for further treatment. On cross-examination, he testified that it was possible that Dr. Ploger could have treated Mrs. Ploger informally following the 21 June 2000 accident. However, on re-direct examination, Dr. Shackleton testified that such treatment would have been recorded in Dr. Ploger's notes. There was no evidence in those notes of treatment after the June 2000 accident, although his notes showed injections of cortisone in July 1999 and March 2000, well before the June 2000 accident.
Dr. Shackleton specifically testified that the left knee, hip, neck and shoulder symptoms for which he treated Mrs. Ploger were related to the accident in question. He also confirmed that Mrs. Ploger's complaints of loss of stamina and difficulty in sitting, walking, touring and climbing are consistent with those physical problems. He approved of her working with a physical trainer at Elmwood Fitness Center. He opined that Mrs. Ploger probably would not have a full recovery. He referred Mrs. Ploger to Dr. Dieffenbach for breast reduction surgery following the accident, believing the procedure would help to ameliorate her neck and shoulder pain. He confirmed Mrs. Ploger's testimony that she had never before expressed any interest in undergoing this procedure.
On cross-examination, Dr. Shackleton testified that at no point after the accident and during his course of treatment did Mrs. Ploger demonstrate swelling in her knees or reduced range of motion, or true spasm in her neck and shoulders. He also testified that because of her degenerative arthritic condition, there was a reasonable chance that her knees would have gotten progressively worse over time without any trauma. However, on re-direct examination, he testified that these osteoarthritic changes, if asymptomatic, could become symptomatic as a result of trauma.

STANDARD OF REVIEW
It is well settled that a court of appeal may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is a conflict in the testimony, *1119 reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989).
With respect to a general damage award, our initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963).
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific; however, the theme that emerges from the jurisprudence is that the discretion vested in the trier of fact is great, and even vast, so that an appellate court should rarely disturb an award of general damages. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La. 1993).

FIRST ASSIGNMENT OF ERROR: The trial court's $40,000 general damage aware is excessive.
The award of $40,000 in general damages is not obviously the result of passion or prejudice, and bears a reasonable relationship to the elements of the proved damages. Dr. Shackleton testified that because of his business relationship with Dr. Ploger, he did not charge the Plogers his usual rates. The trial court could properly infer from this testimony that the amount of Dr. Schackleton's bill was artificially reduced and, were he treating an unrelated person, would have been substantially higher. Such a charge would bear a closer relationship to the general damage award.
We are aware that other rational triers of fact could have decided that a lower award to Mrs. Ploger would be more appropriate, but we cannot conclude from the entirety of the evidence viewed in the light most favorable to Dr. and Mrs. Ploger, that a rational trier of fact could not have fixed the award of general damages at $40,000. The trial judge heard Mrs. Ploger's testimony concerning her pain and restricted activities, and Dr. Ploger's confirming testimony. The trial judge noted that Mrs. Ploger was treated actively by Dr. Shackleton for a year, and continued to receive physical therapy and, continuing to the time of trial, private training at Elmwood Fitness Center.
The standard of review for damage awards requires a showing that the trier of fact abused his great, even vast discretion accorded in awarding damages. In effect, the award must be so high or so low in proportion to the injury that it "shocks the conscience." Moore v. Healthcare Elmwood, Inc., 582 So.2d 871 (La.App. 5th Cir.1991). We conclude on our review of the evidence that this is not one of those "exceptional cases where such awards are so gross as to be contrary to right reason." See, Bartholomew v. CNG Producing Co., 832 F.2d 326 (5th Cir.(La.) 1987); Youn v. Maritime Overseas Corp., supra, 623 So.2d at 1261. This assignment of error is without merit.

SECOND ASSIGNMENT OF ERROR: The trial court erred in basing its general damage award on plaintiff's claim that she injured her hip.
The trial judge accepted Mrs. Ploger's testimony concerning injury to her hip. *1120 We find nothing in the record to indicate that the trial judge based his award on an improper consideration of the nature of Mrs. Ploger's complaints. He concluded that Mrs. Ploger reported hip pain to Dr. Shackleton and that Dr. Ploger rendered orthopedic care for her hip post-accident. When considered together with the evidence of the other injuries and consequent damages sustained by Dr. and Mrs. Ploger, we cannot say that the trial court was manifestly erroneous or clearly wrong in its assessment. This assignment of error is without merit.

THIRD ASSIGNMENT OF ERROR: The trial court erred in awarding damages related to plaintiff's breast reduction surgery.
The trial court found that Mrs. Ploger underwent breast reduction surgery by Dr. Kenneth M. Dieffenbach in an effort to ameliorate the chronic pain in her neck, shoulders and upper back. This finding is supported by testimony from Dr. Shackleton and Mrs. Ploger. It is clear from the record that although Mrs. Ploger had a long-term condition of heavy breastedness, it was not until the accident that the consequent discomfort led her to accept the radical alternative of breast reduction surgery. We cannot say that the trial court was manifestly erroneous or clearly wrong in its acceptance of the supporting testimony. This assignment of error is without merit.

FOURTH ASSIGNMENT OF ERROR: The trial court erred in awarding lost earnings.
In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury. LSA-C.C. art. 2324.1. Lost earnings need not be proven in every case with mathematical certainty; however, the law requires such proof as reasonably establishes the claim. This may consist of the plaintiffs own testimony. McDonough v. Royal Sonesta, Inc., 93-0183 (La.App. 4 Cir. 10/28/93), 626 So.2d 438, 440, citing Sherlock v. Berry, 487 So.2d 555 (La.App. 4 Cir.1986) and Woolfarth v. City of New Orleans, 572 So.2d 1194 (La.App. 4 Cir.1990). See also, Haydel v. Hercules Transport, Inc., 94 1246 pp. 27-28 (La.App. 1 Cir. 4/7/95), 654 So.2d 418, 434; Fergins v. Caddo Parish School Bd., 31,729 p. 6 (La. App. 2 Cir. 3/31/99), 736 So.2d 943, 946-47; Maynor v. Vosburg, 25,922 p. 16 (La. App. 2 Cir. 11/28/94), 648 So.2d 411, 421; Dowden v. Mid State Sand & Gravel Co., Inc., 95-231 p. 16 (La.App. 3 Cir. 11/2/95), 664 So.2d 643, 653.
In Rhodes v. State through Dept. of Transp. and Development, 94 1758 p. 27 (La.App. 1 Cir. 5/5/95), 656 So.2d 650, 668, the court allowed recovery of lost wages based on plaintiff's testimony as to her hourly wage and further testimony that she was unable to work following her accident. However, it rejected her claim for a year's lost wages in light of testimony that her doctor had advised her to go back to work within three weeks of the accident. The court held that it was reasonable that she would have been unable to work for three weeks and awarded lost wages for only that length of time.
This principle is subject to the caveat that to allow a plaintiff to recover damages for lost wages when there is NO independent support of plaintiff's claim is highly speculative. McDonough, 626 So.2d at 440, citing Hicks v. Barney, 526 So.2d 391 (La.App. 4 Cir.1988). The Haydel opinion also notes that uncorroborated testimony by a plaintiff as to his wage loss can be highly speculative. See also, Bennett v. Stribling, 96 1012 (La.App. 1 Cir. 3/27/97), 694 So.2d 991.
In Turner v. Cleveland Trust Co., 95-2488 pp. 22-23 (La.App. 4 Cir. 5/22/96), 686 *1121 So.2d 871, 880-81, this Court considered a claim for lost wages arising out of an accident that occurred on 23 September 1991. Plaintiff failed to provide any independent support or objective facts to corroborate her claims for lost past and future wages and earning capacity. Plaintiff presented her social security earnings history for 1983 through 1992, showing her earning no more than approximately $6,600 annually. The year before the accident, she earned only $235.50. At trial, plaintiff attempted to introduce an uncertified tax return, unsupported by W-2 form, showing income of $8,515 for 1990. The trial judge found this return to be untrustworthy, since it conflicted with the social security record and was uncertified and lacked a supporting W-2 form and refused to accept it as evidence. This court affirmed, noting the trial court's general questioning of plaintiff's credibility. We found no clear error in the trial court's failure to award damages for lost wages, after having applied the manifest error standard of review.
The Third Circuit has consistently held that a plaintiffs uncorroborated testimony is sufficient to prove lost wages as long as such proof is uncontradicted and reasonably establishes his claim. Skipper v. Berry, 99-1433 p. 8 (La.App. 3 Cir. 3/15/2000), 762 So.2d 56, 61-62. In the case of an hourly wage earning ironworker, where there was proof that corroborative evidence was readily available and not produced, the Third Circuit court found plaintiffs uncorroborated and self-serving testimony to be insufficient to prove lost wages, since this loss could have been computed with mathematical certainty. Mathews v. Dousay, 96-858 p. 15 (La. App. 3 Cir. 1/15/97), 689 So.2d 503, 513.
This Court held that there can be no recovery where a plaintiffs otherwise uncorroborated testimony as to lost wages is controverted by defense evidence. Cooper v. Lacorte, 99-1726 p. 9 (La.App. 4 Cir. 5/17/2000), 775 So.2d 4, 10. Plaintiff testified to prior employment cutting grass; however, defendants introduced evidence showing that plaintiff did not report any earned income for the prior five years. Accordingly, we reversed the trial court's award of lost wages and earning capacity.
This Court consistently applies the manifest error standard to judge the fact finder's conclusions respecting lost wages. In Riley v. Reliance Ins. Co., 97-0445 (La.App. 4 Cir. 11/19/97), 703 So.2d 158, the appellant's assigned error attacking a jury award for past lost wages was rejected after application of the manifest error standard.
The trial court found that Mrs. Ploger has had to restrict her tour guide activities because of her pain and physical infirmities. That conclusion is clearly supported by the record evidence. Mrs. Ploger testified without contradiction that she earned between $5,000 and $7,000 annually prior to the accident from this part-time job. The trial judge accepted that testimony, implicitly finding Mrs. Ploger to be a credible witness. She then provided 1099 forms from an agency that used her guide services showing earnings of $3,377 in 1999 and $2,248 in 2000. The drop in income is consistent with Mrs. Ploger's medical history and with her own testimony. The evidence would justify a finding of between $1600 and $3600 in 1999 losses and between $2750 and $4750 in loses in 2000, for a total wage loss of between $4300 and $7750. A finding of lost wages within that range would have been proven to a reasonable certainty. The trial judge exercised restraint in making his award of $2,000 total lost wages. The trial judge had all the evidence before him, and implicitly found Mrs. Ploger to be a reliable, credible witness. We have examined the record in its entirety and do not find this *1122 conclusion to be manifestly erroneous or clearly wrong. Defendants had the opportunity to subpoena any records that they believed would contradict Mrs. Ploger's testimony, but failed to do so. We find no authority for the proposition implicit in defendants' argument that the 1099 tax forms together with the plaintiff's uncontroverted testimony is insufficient to prove lost wages. This assignment is without merit.
FIFTH ASSIGNMENT OF ERROR: The trial court erred in awarding plaintiffs husband $5,000 for loss of consortium.
Given the uncontroverted testimony of Dr. and Mrs. Ploger concerning the loss of enjoyment of their married life, together with their uncontroverted testimony concerning the additional household duties imposed on Dr. Ploger by his wife's infirmities, we find the trial court's award of $5,000 to Dr. Ploger for loss of consortium to be reasonable. This assignment of error is without merit.

CONCLUSION AND DECREE
For the foregoing reasons, we affirm the judgment of the trial court and assess the costs of this appeal against defendants, William D. Reese and Allstate Insurance Company.
AFFIRMED