Judge Tiffany G. Chase
This matter involves a dispute over damages awarded as a result of a personal injury incident. Certain Underwriters at Lloyd's of London (hereinafter "Lloyd's of London"), the excess insurer, challenges the amount of damages the trial court awarded for past medical expenses. The plaintiffs answer on appeal, contesting certain elements of the trial court's award. After consideration of the record before this Court, and the applicable law, we affirm the judgment of the trial court.
Facts and Procedural History
Joseph McCloskey, Matthew Squyres and Allen Roberts were involved in an automobile accident on July 9, 2014.[1] While traveling westbound on Interstate 10, in St. Bernard Parish, plaintiffs' vehicle was rear ended by a truck owned by Higman Barge Lines, Inc. After granting plaintiffs' motion for partial summary judgment on the issue of liability, the trial court reserved the issues of causation and damages for trial.
*1177 A five day bench trial began on December 11, 2017. On the last day of trial, Diagnostic Management Affiliates, Preferred Provider Organization, LLC (hereinafter "DMA"), a non-party, filed a motion to quash a trial subpoena issued to DMA. In the alternative, DMA sought a protective order. Specifically, DMA requested that the trial court preclude testimony and production of documentation, sought by Lloyd's of London, regarding payments between DMA and its contracted physicians. A hearing was held January 16, 2018, on the motion to quash. By judgment dated January 31, 2018, the trial court granted DMA's motion finding testimony and production of documentation from DMA is precluded by the collateral source rule.
After taking the merits of the matter under advisement, the trial court entered judgment on August 2, 2018, in favor of plaintiffs.[2] Specifically, the trial court's award is as follows:[3]
Mr. McCloskey, Jr.
Past medical expenses .....................$ 462,296.33
Future medical expenses ..................$ 453,281.00
Past wages .........................$ 33,381.00
Future wages .........................$ 156,245.00
General damages .........................$ 1,600,000.00
Mr. Squyres
Past medical expenses ......................$ 170,641.56
Future medical expenses ...................$ 35,000.00
Past wages .........................$ 0
Future wages .........................$ 0
General damages .........................$ 350,000.00
Mr. Roberts
Past medical expenses ......................$ 274,284.05
Future medical expenses ...................$ 189,546.00
Past wages .........................$ 57,732.78
Future wages .........................$ 169,688.07
General damages .........................$ 500,000.00
Lloyd's of London appealed the trial court's judgment. Plaintiffs subsequently filed an answer to the appeal.
Lloyd's of London presents two assignments of error: (1) the trial court improperly granted DMA's motion to quash the trial subpoena and subpoena duces tecum, thus committed legal error by not allowing Lloyd's of London to call a DMA representative as a witness at trial; and (2) the trial court erred in awarding Mr. McCloskey future medical expenses for pain management because it was not supported by the evidence.
Jurisdictional Issue
As a threshold matter, we are tasked with determining whether the trial court's judgment of January 31, 2018, granting DMA's motion to quash is *1178 properly before this Court. DMA filed its motion to quash subpoena, or in the alternative motion for protective order, on December 15, 2017, the last day of the five day bench trial.[4] At the conclusion of trial, the trial court left the record open and set a hearing on the motion to quash for January 16, 2018. On January 31, 2018, the trial court issued a judgment granting the motion, finding the information sought from DMA is precluded by the collateral source rule. No judicial review was sought from this judgment.
Lloyd's of London maintains that the judgment is an interlocutory judgment, not immediately appealable, and can be raised in its appeal. Conversely, plaintiffs argue that Lloyd's of London failed to timely request review of the judgment on DMA's motion to quash and as such, waived the right to seek review of the January 31, 2018 judgment.
The determination of discovery questions as to a non-party in the case is a final appealable judgment. St. Bernard Port , Harbor & Terminal Dist. v. Violet Dock Port, Inc., L.L.C. , 2014-0286 (La.App. 4 Cir. 8/27/14), 147 So.3d 1266, n.1 ; See also, Larriviere v. Howard , 2000-186, p. 3 (La.App. 3 Cir. 10/11/00), 771 So.2d 747, 750 (citing R.J. Gallagher Co. v. Lent, Inc. , 361 So.2d 1231 (La.App. 1 Cir. 1978) ); La. C.C.P. arts. 1841, 2083(A). As such, the January 31, 2018 judgment in favor of DMA and against the Defendants was subject to the time delays set forth in La. C.C.P. arts. 2087, 2123. The Defendants motion for suspensive appeal was filed on September 12, 2018. Accordingly, the appeal of the January 31, 2018 judgment is untimely and is therefore dismissed.
Discussion
Past Medical Expenses
Lloyd's of London challenges whether the amounts billed by DMA is a recoverable element of plaintiffs' damages award. We answer that inquiry in the affirmative.
An award of special damages is subject to a manifest error standard of review. "Special damages are those which...may be determined with relative certainty, including medical expenses and lost wages." Kaiser v. Hardin , 2006-2092, p. 11 (La. 4/11/07), 953 So.2d 802, 810. The appellate court must first conclude that no reasonable factual basis exists for the trial court's award and secondly, that the award is clearly wrong. Kaiser , 2006-2092, p. 12, 953 So.2d at 810.
The trial court awarded plaintiffs' past medical expenses. These expenses included the amount billed by DMA for plaintiffs' past medical procedures. Plaintiffs must prove that their injuries and associated treatments were the result of the accident at issue in order to collect past medical expenses. Levy v. Lewis , 2016-0551, p. 16 (La.App. 4 Cir. 5/17/17), 219 So.3d 1150, 1160. "Absent bad faith, 'it is error for the trier of fact to fail to award the full amount of medical expenses that are proven by a preponderance of the evidence that were incurred as a result of an accident.' " Watson v. Hicks , 2015-0046, p. 26 (La.App. 4 Cir. 5/27/15), 172 So.3d 655, 675 (quoting Earls v. McDowell , 2007-2017, p. 8 (La.App. 5 Cir. 5/15/07), 960 So.2d 242, 248 ).
The trial court found the medical expenses incurred by plaintiffs resulted from injuries sustained in the accident at issue. Each plaintiffs' treating physician testified regarding treatment and procedures performed. Additionally, each plaintiffs'
*1179 medical expenses were itemized and bills entered into evidence. This itemization included the medical procedures which were funded by DMA. Applying a manifest error standard of review, we find a reasonable factual basis exists for the trial court's award. Given that the medical procedures and treatments of each plaintiff was the result of injuries sustained in the accident, plaintiffs are entitled to recover the full amount of medical expenses associated with such procedures and treatments. We find no merit to this assignment of error.
Pain Management Medical Expenses
Lloyd's of London asserts that the trial court erred in awarding Mr. McCloskey damages for future medical expenses associated with his pain management treatment. Lloyd's of London maintains that future pain management was not warranted because Mr. McCloskey was discharged from his pain management doctor as a result of testing positive for cocaine. We find this assignment of error lacks merit.
The trial court found credible the testimony of Mr. McCloskey's treating physician, Dr. Everett Robert (hereinafter "Dr. Robert"), which established future pain management was required as a result of surgeries Mr. McCloskey received relative to the July 9, 2014 accident. Dr. Robert testified that he recommends Mr. McCloskey see a pain specialist four times a year for the remainder of his life. Dr. Robert also noted that Mr. McCloskey's discharge from a pain management clinic was irrelevant. He maintained that he continues to recommend Mr. McCloskey receive pain management treatment. Dr. Robert recommended future pain management treatment irrespective of Mr. McCloskey's drug use. The trial court agreed with Dr. Robert's recommendation, stating that Mr. McCloskey's positive drug test does not preclude him from being treated by another physician once he is no longer using drugs. "[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." Stobart v. State through Dept't of Transp. & Dev. , 617 So.2d 880, 882 (La. 1993).
Based upon the record before this Court, we find the trial court's award of damages for pain management was reasonably supported by the testimony. The trial court's conclusion was reasonable and will not be disturbed upon review. We find no merit to this assignment of error.
Plaintiffs' Answer to Appeal
Through their answer to Lloyd's of London's appeal, the plaintiffs seek review of the trial court's award for lost wages, prescription medications and general damages. We will discuss each in turn.
Lost Wages
Plaintiffs maintain the trial court erred in not considering each of their testimony as evidence of cash payments received as part of the trial court's lost wage calculation. The trial court found insufficient evidence presented to establish that cash payments from plaintiffs' employer should be included in the base pay calculation.
The manifest error standard of review is consistently applied by this Court when reviewing an award for lost wages. Ploger v. Reese , 2001-2243, p. 13 (La.App. 4 Cir. 5/22/02), 819 So.2d 1114, 1121. "Lost earnings need not be proven in every case with mathematical certainty; however, the law requires such proof as reasonably establishes the claim. This may consist of the plaintiff's own testimony." Id. , p. 10, 819 So.2d at 1120 (citations omitted). To support their claims for lost wages plaintiffs submitted payroll documentation from their employer, Duxworth Roofing and Sheet Metal (hereinafter "Duxworth"), as *1180 well as federal tax documentation. Plaintiffs also testified that a portion of their earnings was received in cash payments. They testified that on payday, every week, employees would pick up a check with an envelope containing cash attached to the check. The trial court considered this testimony in reaching its conclusions as to each individuals lost wage claim. We now consider the merits of each plaintiffs claim.
Mr. McCloskey and Mr. Roberts lost wage claims
In its reasons for judgment, the trial court found that: (1) Mr. McCloskey did not establish that he received cash payments from Duxworth; and (2) Mr. Roberts did not provide reliable verification of the likely cash payments he received from Duxworth. "A trial court has broad discretion in assessing awards for lost earnings, but there must be a factual basis in the record for the award." Burch v. SMG, Schindler Elevator Corp. , 2014-1356, p. 13 (La.App. 4 Cir. 4/7/16), 191 So.3d 652, 662. The record supports a factual basis for the trial court's award and its determination of lack of evidentiary support for Mr. McCloskey and Mr. Roberts' claims.
Mr. McCloskey testified that he was paid $700.00 per week. He maintained that $500.00 of that was paid by check, as represented by Duxworth's payroll documentation, and the remainder was received in cash. Mr. Roberts testified that he was making $120.00 per day working at Duxworth, a portion of which was paid in cash. Additionally, he testified that he was making between $150.00 and $200.00 on the weekends at a second job as an oyster shucker. He claimed that credit card tips were electronically deposited and that cash tips were pocketed. Lloyd's of London argued that the additional money sought by Mr. Roberts was not represented on payroll or federal tax documentation and that it was money given to employees for expenses, not income. Mr. McCloskey and Mr. Roberts also offered the testimony of Donovan Squyres as corroboration that Duxworth paid a portion of its employee earnings in cash. Donovan Squyres was Mr. McCloskey and Mr. Roberts' supervisor and had knowledge of Duxworth's pay day procedure. Donovan Squyres testified that Duxworth would give employees a weekly per diem in addition to regular earnings because they were staying on location at the job site. However, an official representative of Duxworth did not testify at trial, although a subpoena was issued, and no official testimony established that the cash was additional income Duxworth provided to its employees. The trial court, while acknowledging the likelihood that Duxworth made cash payments to its employees, noted that the cash payments could not be sufficiently verified.
The trial court awarded lost wages to Mr. McCloskey and Mr. Roberts, but refused to include cash payments in its calculations. It is not the role of this Court to reverse the factual findings of a trial court unless it is determined that a reasonable basis does not exist for the trial court's factual determinations and that the trial court's finding was clearly wrong. Waters v. Oliver , 2016-1262, p. 6 (La.App. 4 Cir. 6/22/17), 223 So.3d 37, 43. The trial court reviewed all the evidence and chose not to include cash payments as income in the lost wage calculation. While acknowledging that plaintiffs probably received cash payments, the trial court found insufficient evidence to include cash payments in its award. The record before this Court demonstrates that the trial court's findings are reasonably supported. We therefore do not find that the trial court's ruling was manifestly erroneous. We find no merit to this assignment of error.
*1181 Mr. Squyres lost wage claim
Mr. Squyres argues the trial court erred in not awarding him any lost wages. Like the other plaintiffs, Mr. Squyres submitted documentation showing previous income earned. He testified that he worked at Duxworth in 2003, 2004, 2009 and 2014. In order to recover for lost wages, a plaintiff is tasked with proving that he would have been earning wages if not for the accident subject of the litigation. Burch , 2014-1356, p. 13, 191 So.3d at 662.
Mr. Squyres offered his own testimony to support his claim for lost wages. Although a plaintiff's own testimony can be used to establish a claim for lost wages, the trial court is allowed broad discretion is assessing awards for lost earnings. See Driscoll v. Stucker , 2004-0589, p. 29 (La. 1/19/05), 893 So.2d 32, 53. While Mr. Squyres presented previous income documentation, the inconsistencies and gaps in years of income fail to adequately attribute loss of earnings to the July 9, 2014 accident. Additionally, as noted by the trial court in its reasons for judgment, Mr. Squyres did not offer testimony from an economist regarding his loss of earnings. The record demonstrates that Mr. Squyres did not establish that he would have been earning wages if not for the accident. As such, we find a reasonable basis exists for the trial court's determination. We find no merit to this assignment of error.
Prescription Medication
Mr. McCloskey and Mr. Roberts argue that the trial court abused its discretion by using the cost of generic medication, as opposed to name brand medication, when calculating the award for future medical expenses.
A trial court is given great discretion in assessing a quantum associated with an award of general and special damages. Guillory v. Lee , 2009-0075, p. 14 (La. 6/26/09), 16 So.3d 1104, 1116. Dr. Stokes' reports contained amounts for both generic and name brand medications for the future prescription needs of Mr. McCloskey and Mr. Roberts. At trial, Dr. Stokes submitted cost for both generic and brand name medications. He explained that cost is contingent upon the medication a physician prescribes. He further testified that his reports include cost for both- generic and name brand- because the patents for name brand medications expire over time, resulting in a reduction in cost. Additionally, Dr. Stokes opined that neither of plaintiffs' treating physicians indicated that name brand medications were required. The trial court was not obligated to base its award for future cost of prescriptions on name brand medications. "[T]he appropriate amount of damages, by a trial judge..., is a determination of fact, one entitled to great deference on review." Id. at 1116. The trial court's award for prescription medication was based on factual evidence presented and not clearly wrong. We find no merit to this assignment of error.
General Damages
Lastly, Mr. Roberts seeks review of the trial court's award of $500,000.00 in general damages. He argues that the nature of his injuries warrants a higher award. Mr. Roberts also contends that the trial court improperly relied on older cases to calculate the award, which does not allow for consideration of an increase in cost of living and passage of time.
Prior to questioning the inadequacy or excessiveness of a trial court's general damage award, this Court must first look to the individual circumstances of the current case, not prior awards. Reck v. Stevens , 373 So.2d 498, 501 (La. 1979). "Only after making the finding that [t]he record supports that the lower court *1182 abused its much discretion can the appellate court disturb the award...." Id. at 500.
Awards for general damages "are inherently speculative; therefore, the trial court is afforded much discretion, and the appellate court may not disturb the trial court's award unless an articulated analysis of the facts and circumstances of the case reveals an abuse of that discretion." Cline v. Cheema , 2011-1029, p. 15 (La.App. 4 Cir. 2/22/12), 85 So.3d 260, 269 (citing Bouquet v. Wal-Mart Stores,Inc. , 2008-0309, pp. 4-5 (La. 4/4/08), 979 So.2d 456, 459 ). The trial court has abused its discretion if the award is so disproportionate to the injury that it shocks the conscience. Wendel v. Travelers Ins. Co. , 2014-0002, p. 6 (La.App. 4 Cir. 10/8/14), 151 So.3d 828, 834.
A review of the record establishes that the trial court did not abuse its discretion in determining Mr. Roberts' general damages award amount. We do not find that the amount awarded is so low and disproportionate that it shocks the conscience. Mr. Roberts suffered injuries to his shoulder, back, ear and head. In its reasons for judgment, the trial court noted that as a result of the accident, Mr. Roberts would suffer permanent restrictions which would limit the type of work he could perform in the future. The trial court also took into account the testimony of Mr. Roberts' wife regarding the effects of his pain and suffering. Considering the vast discretion afforded to the trial court, and the fact that it took into account all elements associated with Mr. Roberts' injuries, we find no abuse of discretion in the trial court's award of $500,000.00 in general damages. Therefore, no circumstances exist under which to disturb the trial court's award. We find no merit to this assignment of error.
Conclusion
For the reasons stated, we affirm the judgment of the trial court.
AFFIRMED

For ease of discussion we will refer to the parties by their last name when referencing them individually and as "plaintiffs" when referencing them in the collective.

The trial court also awarded damages to the fourth plaintiff, Donovan Squyres. However, he reached a post-trial settlement and is not a party on appeal.

Prior to trial, plaintiffs' entered into a "Gasquet Settlement" with Higman Barge Lines, Inc., the driver and its primary insurance carrier. As such, the total amount awarded to each plaintiff was reduced by the settlement amount. See Gasquet v. Commercial Union Ins. Co. , 391 So.2d 466 (La.App. 4 Cir. 1980).

The motion to quash was originally fax filed on December 13, 2017.