445 So.2d 749 (1984)
Mrs. Shirley TILLMAN, Individually and on Behalf of her Minor Children, Teaka Noel Tillman, Geno Farantino Tillman, Lachina Marie Tillman and Jetson Earl Tillman, III, and Daisy Taylor on Behalf of her Minor Children, Samuel Lee Taylor, Darnell Taylor, Regina Taylor, Tammy Taylor and Tandia Taylor and Mrs. Martha Tillman and Henry Hawkins, Sr.
v.
Karen L. Massey, wife of/and Gregory MASSEY, Harold Massey and Safeco Insurance Company.
No. CA 0526.
Court of Appeal of Louisiana, Fourth Circuit.
January 12, 1984.
Writ Denied March 9, 1984.
*750 Larry P. Boudreaux, Thibodaux, for defendants-appellants.
Andrew L. Plauche, Jr., Plauche & Maselli, New Orleans, for appellee.
Louis A. Gerdes, Jr., New Orleans, for plaintiff-appellee/appellant.
Before REDMANN, SCHOTT, AUGUSTINE, CIACCIO and WARD, JJ.
CIACCIO, Judge.
The surviving heirs of Jetson Tillman, Jr. and Samuel Hawkins brought this action to recover damages for the wrongful deaths of Tillman and Hawkins. This action arose out of a vehicle/motorcycle accident on Chef Menteur Highway at Seminary Place in New Orleans. The case was tried before a jury. Upon completion of the case, the trial court granted a directed verdict dismissing American Motorist Insurance Company, the insurer of Baptist Theological Seminary. The jury rendered judgment against Karen Massey and her insurer, in favor of the surviving heirs of Samuel Hawkins in the amount of $160,000 for each of his five (5) minor children. The claims against Harold Massey, the owner of the automobile, and Gregory Massey, the husband of Karen Massey, were dismissed. The jury further rendered judgment in favor of Karen Massey and her insurer against the Estate of Jetson Tillman, Jr., in contribution, for one-half of the judgment. Karen Massey and her insurer, Safeco Insurance Co. filed a devolutive appeal contesting the issue of liability. The plaintiffs also appealed devolutively, contending that the district court erred in granting a directed verdict in favor of the insurer of Baptist Theological Seminary. We reverse the judgment of the district court on the issue of Mrs. Massey's liability and we affirm the district court's judgment granting a directed verdict dismissing American Motorist Insurance Company.
This accident occurred on Monday, July 21, 1977 at approximately 8:10 p.m. on Chef Menteur Highway at Seminary Place. Karen Massey was operating a 1973 Ford station wagon which was owned by Harold Massey and was occupied at the time of the accident by herself and her two-year old son, Richard Massey. Mrs. Massey was proceeding southbound on Seminary Place with the intention of crossing Chef Menteur Highway in order to proceed in an eastward direction on that roadway. Seminary Place is a two lane roadway, with traffic proceeding in opposite directions. Jetson Tillman, Jr. was operating a 1974 Susuki motorcycle, which was owned and occupied by a guest passenger, Samuel Hawkins. The motorcycle was travelling westbound on Chef Menteur Highway at *751 the time of the accident. Chef Menteur Highway is a six lane roadway with three eastbound lanes and three westbound lanes of traffic which are divided, in the middle, by a neutral ground. There exists a right curve in the roadway for west bound traffic on Chef Menteur Highway, within one-tenth of a mile east of Seminary Place.
At the moment of impact, Mrs. Massey's vehicle had crossed the first westbound traffic lane of Chef Menteur Highway and was positioned midway across the second and fully across the third lanes of westbound traffic on that roadway. The motorcycle which was driven by Tillman and occupied by Hawkins, struck the left rear quarter panel of the station wagon as that portion of the vehicle was positioned in the center westbound lane of Chef Menteur Highway. The impact was so great that it pushed the rear of the Massey vehicle 180 degrees into the neutral ground area, so that the front of the vehicle was facing in the opposite direction from which it had been travelling. As a result of the impact, Jetson Tillman, Jr. was thrown from the motorcycle a distance of 41 feet 9 inches and Samuel Hawkins was thrown 26 feet 8 inches. Both riders sustained fatal injuries.
The issues presented on appeal are: (1) Did the trial court err in directing a verdict in favor of American Motorists Insurance Company, the insurer of Baptist Theological Seminary? (2) Was the finding of the jury, on the issue of Karen Massey's liability, manifestly erroneous?
Liability of Baptist Theological Seminary
The plaintiffs contend that the Baptist Theological Seminary was negligent in failing to remove certain natural and man-made obstructions (i.e., shrubbery and a brick entranceway) from its property at Seminary Place and Chef Menteur Highway. They further contend that this negligence contributed to the accident of July 21, 1977, in that the obstructions impeded the visibility of Mrs. Massey as she neared the highway from her position on Seminary Place. On appeal, plaintiffs contend that the trial court erred in directing a verdict in favor of the insurer of the Baptist Theological Seminary.
Since the plaintiffs did not reurge this contention in arguments before the five-judge panel of this Court it would appear that they have abandoned their former position. Assuming, however, that the issue is still before the Court, we find that the trial court acted correctly in granting the directed verdict.
The plaintiff has the burden of proving every element of his cause of action. Laird v. Travelers Indemnity Co., 236 So.2d 561 (La.App., 4th Cir., 1970). In the instant case the plaintiffs failed to prove that the property which allegedly contained the obstruction was owned by the Baptist Theological Seminary or that this defendant had a duty to maintain this property. Accordingly, there can be no liability on the part of this defendant. La. C.C. Arts. 2316, 2317. See: Savarese v. Bye, 398 So.2d 1276 (La.App., 4th Cir., 1981); Pepitone v. State Farm Mutual Automobile Insurance Co., 369 So.2d 267 (La.App., 4th Cir., 1979) writ ref. 371 So.2d 1343 (La.1979). The directed verdict in favor of American Motorists Insurance Company was properly granted.
Liability of Karen Massey
The jury found that Mrs. Massey's actions constituted negligence and that this negligence was a proximate cause of the accident.
The appellants contend that Mrs. Massey acted as a reasonably prudent driver under the circumstances and thus, she was free from negligence. They further argue that the sole proximate cause of the accident was the negligent acts of Jetson Tillman, Jr. in travelling at an excessive rate of speed and failing to keep a proper look out.[1]
*752 In the case of Pitre v. Employers Liability Assurance Corp., 234 So.2d 847 at 851-852 (La.App., 1st Cir.1970), writ den., 256 La. 617, 237 So.2d 398 (1970) the court discussed the general theory of negligence:
Plaintiff in a tort action must establish his case by a clear preponderance of evidence. Perkins v. Texas and New Orleans Railroad Company, 243 La. 829, 147 So.2d 646. An indispensable element that plaintiff must establish in a claim for negligent injuring is the existence of a duty by defendant to protect plaintiff from injury. Lanza Enterprises, Inc. v. Continental Ins. Co., La.App., 129 So.2d 91; Trahan v. Liberty Mutual Insurance Company, La.App., 188 So.2d 435; Payton v. St. John, La.App., 188 So.2d 647.
Fault is determined by asking the question: How would a reasonably prudent individual have acted or what precautions would he have taken under the same or similar circumstances? Tucker v. Travelers Insurance Company, La.App., 160 So.2d 440. Negligent conduct is determined in the light of the facts and environmental circumstances of each case. Zorick v. Maryland Casualty Company, La.App., 172 So.2d 706.
Failure to take every precaution against all foreseeable injury to another does not necessarily constitute negligence. On the contrary, negligence requires that the risk be both foreseeable and unreasonable. Turner v. Caddo Parish School Board, 252 La. 810, 214 So.2d 153. Failure to take a particular precaution to guard against injury to another in connection with a risk constitutes negligence only where it appears such a precaution would have been undertaken under the circumstances by a reasonably prudent individual. Turner v. School Board, above. One is bound to protect against what usually happens or what is likely to happen under the circumstances. Wilson v. Scurlock Oil Co., La.App., 126 So.2d 429. Ordinary care requires only that precautions be taken against occurrences that can and should be foreseen; it does not require that one anticipate unusual and improbable, though entirely possible happenings. Rouseo v. Gauche-Connor Co., 8 Orleans, App. 216. [234 So.2d at 851-852]
A motorist approaching a controlled intersection must not only stop in obedience to a stop sign but he is required to see approaching vehicles on the favored street and to yield to them the right of way. Landry v. Yarbrough, 199 So.2d 377 (La. App., 1st Cir., 1967) and cases cited therein.
A crossing motorist need only wait until there exists a reasonably safe opportunity to cross. See: Shumaker v. Plain, 36 So.2d 869 (La.App., 1st Cir., 1948). Accordingly, a motorist entering a right-of-way street is not required to wait until there is no traffic in sight and he may also assume that the other vehicles will obey the speed limit. Faulk v. Schlumberger Well Services, 412 So.2d 162 (La.App., 3rd Cir., 1982). Camet v. Guillot, 291 So.2d 438 (La.App., 4th Cir., 1974)
In order for the doctrine of pre-emption to apply to a motorist who has entered the intersection before the traversing vehicle, the one seeking to invoke this doctrine must show that he entered the intersection at a proper speed and sufficiently in advance of the vehicle on the intersecting street to permit him to cross without requiring an emergency stop by the other vehicle. Simmons v. Baumgartner, 393 So.2d 904 (La.App., 4th Cir., 1981). Therefore, before one can benefit from the doctrine of pre-emption, he must establish that he entered the intersection first, that his entry was made after first ascertaining that the intersection traffic was so far removed so as to allow his safe passage and that he entered the intersection with the bona fide belief and expectation that he could cross safely. Robertson v. Ratcliff, 260 So.2d 155 (La.App., 2nd Cir., 1972). The doctrine of pre-emption has a two-fold effect: it frees the pre-empting party of negligence and it imposes negligence on the party against whom it is claimed. Fidelity & Casualty Co. of New York v. *753 McCasland, 203 So.2d 756 (La.App., 3rd Cir., 1967).
In this case, Karen Massey, the defendant driver, testified to the events of the accident as follows:
I approached the intersection. I believe there was traffic down Chef Menteur Highway. I came to a stop, waiting for the traffic to clear. I checked my child, who was seated on the seat next to me, being sure that he was quiet and still and sitting down, behaving as a child should in a car. I was waiting for the traffic to clear. I checked to the left and to the right, seeing that there was no more traffic, and none could be seen. I entered into the intersection of Chef Menteur Highway. As I entered the intersection, I again looked to the left. It was then that I noticed a light, which really attracted me, and I discerned that this light was a motorcycle. And it was approaching me at an extremely high rate of speed. I continued to proceed across the intersection, trying to cross to avoid a collision. But there was nothing I could do to avoid the collision. And as I entered into the median section, I remember thinking I must have made it. I must have made it far enough across where he could not hit me. But at that instant, I felt the impact. The car swung around. I threw the car gearshift lever into park and jumped out of the car to run and check on whoever was on the motorcycle, to see if they were injured. [Tr. Vol. II pp. 320-321]
Mrs. Massey further testified that when she made the decision to cross the highway there was no traffic coming. She stated that it was her intention to drive into the median area of the highway, check for traffic coming in the opposite direction and then proceed eastbound. She was travelling at approximately 10-15 miles per hour. She stated that when she was in the middle lane of the roadway, she looked left again and saw the motorcycle in the center lane, proceeding at a rate of speed which she estimated to be in excess of 60 miles per hour from a distance of about 60 yards. She attempted to accelerate further in order to get out of the way but there was not enough time.
On the day of the accident Martha Floyd was in a vehicle directly behind Mrs. Massey on the campus of the Baptist Theological Seminary. She testified that Mrs. Massey approached the intersection and looked to her left and then proceeded slowly across the intersection. In a matter of seconds Mrs. Massey was struck on the rear driver's side by the motorcycle.
Anthony Genovese, a New Orleans Police Officer, was positioned across the highway on Chef Menteur and was looking in the direction of Seminary Place waiting for his partner to return from making a phone call. He testified that he saw Mrs. Massey pull out from the stop sign into the intersection to cross. When Mrs. Massey had just about reached the neutral ground he heard a loud thump and saw the station wagon spin around. He did not see the motorcycle before he heard the thump. Mr. Genovese testified that it appeared to him that, at the time she pulled out, Mrs. Massey had adequate time to cross the intersection.
Jewel Meyers was the police officer who investigated the accident. He took Mrs. Massey's statement at the time of the investigation and that statement was essentially the same as the facts to which the defendant testified at trial. Officer Meyers stated that his investigation revealed that the Chef Menteur Highway at the point of impact is thirty-three feet, ten inches consisting of a right lane of 12 feet 1 inch, a middle lane of 11 feet 3 inches and a left of 11 feet 6 inches. The posted speed limit was 35 miles per hour. He estimated Mrs. Massey's forward movement at 10 miles per hour and that of the motorcycle at a speed between 60 and 70 miles per hour. [Tr. Vol. 2, pp. 77-78]. There were no skid marks at the scene. The damage at the point of impact on the Massey station wagon was at the left rear quarter panel. From the point of impact, after knocking the Station Wagon 180 degrees, the motorcycle travelled 26 feet 8 inches *754 and the Massey vehicle travelled 22 feet, 10 inches. Officer Meyers testified that in his opinion the station wagon was directly in the center lane of Gentilly when the accident occurred.
In attempting to reconstruct the events of the accident, Officer Meyer positioned his vehicle on Seminary Place with the intention of crossing Chef Menteur Highway. He testified that he experienced difficulties in this endeavor as his vision was limited to approximately 1/10th of a mile east of Seminary on Chef Menteur due to the sharp curvature of the roadway. He stated that several times he saw no traffic, pulled forward and just as he did so, a car would come around the curve causing him to reverse his car's direction.
Andrew McPhate, a professor of mechanical engineering was called by the plaintiffs and was qualified as an expert in that field. Taking into consideration the mathematical measurements of the roadway and its physical configuration, Mr. McPhate concluded that even though the highway may appear clear when one decides to go across, there is a strong possibility that it will not be clear for long and thus the intersection should not be blocked for more than 3 to 5 seconds. Mr. McPhate concluded that a driver would have 3½ seconds to cross the first three lanes of the highway if the crossing vehicle was proceeding at 10-15 miles per hour and, therefore, could cross the intersection without hazard, provided vehicles in the westbound traffic lanes were not speeding. He stated that the fact that the motorcycle changed lanes, from the far right lane to the center lane, and also its excessive rate of speed contributed to the accident. Based upon his calculations, McPhate established the speed of the motorcycle to have been 50-60 miles per hour. [Tr., Vol. 2 pp. 103-104]
Mr. Pat Joseph Murray testified that shortly before the accident, he was driving on Chef Menteur Highway towards New Orleans. He noticed the Tillman motorcycle proceeding in the same direction. Both vehicles stopped for a light at the intersection of Press Street and Chef Menteur Highway. Mr. Murray stated that at this time the motorcycle was in the far right lane. He witnessed the motorcycle speed ahead at 40-50 miles per hour, move into the center lane and continue accelerating until it collided with the Massey vehicle. He never saw the motorcycle's brake light go on. Mr. Murray estimated Mrs. Massey's speed at 10-15 miles per hour. He stated that as he proceeded in the center lane at between 25 and 35 miles per hour that he saw the front of Mrs. Massey's car and then her entire vehicle move across the roadway. Mr. Murray's vehicle was not involved in the accident.
Vincent Montalbano was operating his pick-up truck in the left lane of traffic on Chef Menteur Highway proceeding towards New Orleans. His testimony supported that of Mr. Murray. He stated that Mrs. Massey's vehicle did not cause any danger to him and that he saw the accident and came to a normal stop at the accident site. He saw the motorcycle run right into the car with no indication of an attempt to stop or swerve. He concluded that at the time of the accident, the motorcycle was travelling at 75-80 miles per hour. [Vol. 3 pp. 294-295]
A.O. Pickens was called by the defendant and qualified as an expert in the field of traffic accident analysis. He testified that he estimated the minimum speed of the motorcycle to be 82 miles per hour. [Tr. Vol. 4 p. 439]
The plaintiffs contend that Mrs. Massey was negligent in that she stopped, looked left, then looked right and did not again look left before proceeding into Chef Menteur Highway. Plaintiffs cite no authority for their assertion that "it would appear that the last direction one should check is the direction from which the traffic is coming." We know of no authority for such a rule. Mrs. Massey testified that she looked left after the traffic cleared and she saw no further traffic. According to the testimony of the traffic analyst, A.O. Pickins, her maximum visibility was 320 feet. She then checked right and proceeded across the roadway. We conclude that *755 her actions were not unreasonable under the circumstances and we know of no duty for Mrs. Massey to again check to the left side. In any event the evidence is overwhelming to the effect that the motorcycle was beyond her range of vision when she began to cross so that another look would not have caused or required her to wait.
Plaintiffs further allege that Mrs. Massey did not allow herself sufficient time to cross the highway considering the curvature of the road. They intimate that Mrs. Massey should have proceeded across the roadway at a more rapid rate of speed. Mr. McPhate, plaintiffs' expert, testified that at the crossing rate of 10-15 miles per hour (which was Mrs. Massey's speed) a vehicle would have 3½ seconds to cross the first three lanes of the highway and could cross safely if vehicles in the westbound lanes were not speeding. Under the circumstances the defendant's speed was proper. She had no duty to make a "jack-rabbit" start from Seminary Lane across Chef Menteur Highway and the plaintiffs have not given authority for such a proposition. We conclude that her speed was reasonable under the circumstances.
As a matter of law the defendant's actions were not negligent and therefore the jury's conclusion to the contrary was manifestly erroneous.
The lay and expert testimony establish that Mrs. Massey's behavior, on the day of this accident, as being that of a reasonably prudent individual under the circumstances. She approached the stop sign and stopped before entering the highway. She looked to her left and then to her right, and, seeing no approaching traffic, she proceeded at a normal speed across the intersection. She had no duty to anticipate the improbable actions of Mr. Tillman and it appeared to her to be reasonably safe to cross the intersection. She had pre-empted the intersection when she glanced to her left again. She had entered the intersection after first ascertaining that the cross traffic was so far removed to allow safe passage, and with the bona fide belief that she could cross safely. At that moment she perceived the motorcycle for the first time speeding towards her and she accelerated to avoid the accident but there was not enough time for her to avoid the collision. Mrs. Massey was not negligent in her initial action of proceeding across the intersection nor in reacting to the situation of danger once she perceived the speeding motorcycle. On the other hand, because of the excessive speed of the motorcycle it reached the point of the accident much sooner than it would have had it been moving at a legal rate of speed which explains why Mrs. Massey cannot be blamed for not seeing it until it was too late. From the established fact that Tillman didn't even apply his brakes before the impact, it follows that he never saw Mrs. Massey's car until he ran headlong into it. Tillman obviously was not in control of his motorcycle since he could have easily avoided the accident by going around the rear of the car and he failed to do so.
Thus, the sole cause of the accident was the negligent acts of Jetson Tillman, Jr. in exceeding the speed limit, failing to keep a proper lookout, and failing to maintain control of the motorcycle. Were it not for these negligent actions the accident would not have occurred. This conclusion is further supported by the testimony of Pat Murray and Vincent Montalbano, who were proceeding in the same direction as the motorcycle, but at a safe speed and who had no difficulty in avoiding a collision with the Murray vehicle.
For the reasons assigned the judgment of the district court awarding recovery for damages to the minor heirs of Samuel Hawkins against Karen L. Massey and Safeco Insurance Co. is reversed, and in all other respects the judgment is affirmed. Cost of this appeal are to be paid by the plaintiffs-appellees.
REVERSED IN PART AND AFFIRMED IN PART.
NOTES
[1] Although the jury interrogatories were couched in terms of "proximate cause", the proper analysis of negligence in this case and the one utilized by this court is an analysis in terms of a "duty-risk" approach.