994 So.2d 648 (2008)
Sharon EDWARDS
v.
Rochelle PIERRE, Lois Hahn, and The State Farm Mutual Automobile Insurance Company.
No. 2008-CA-0177.
Court of Appeal of Louisiana, Fourth Circuit.
September 17, 2008.
*651 Darleen M. Jacobs, Al A. Sarrat, Rene' D. Lovelace Jacobs, Sarrat & Lovelace, New Orleans, LA, for Plaintiff/Appellant.
John E. McAuliffe, Jr., Frederick A. Miller & Associates, Metairie, LA, for State Farm Fire & Casualty Company As Underinsured Motorist Carrier.
Ike Spears, Pedro F. Galeas, Spears & Spears, New Orleans, LA, For Lois Hahn and State Farm Mutual Automobile Insurance Company.
(Court composed of Judge TERRI F. LOVE, Judge MAX N. TOBIAS, JR., Judge Pro Tempore MOON LANDRIEU).
MAX N. TOBIAS, JR., Judge.
The defendants, Lois Hahn ("Hahn"), and her liability insurer, State Farm Mutual Automobile Insurance Company ("State Farm I"), and State Farm Mutual Automobile Insurance Company ("State Farm II"), in its capacity as the underinsured motorist carrier for the defendant driver, Rochelle Pierre ("Pierre"), appeal the judgment of the trial court assessing Hahn 100% of the fault for causing an automobile collision resulting in injury to *652 the plaintiff, Sharon Edwards ("Edwards"), a guest passenger in Pierre's vehicle. State Farm II also argues, inter alia, that the trial court's awards to Edwards for general damages and past lost wages are excessive. Further, Edwards appeals, seeking an increase in her general damage award, and a decrease in the amount credited to the defendants based on amounts paid prior to trial. For the reasons that follow, we reverse in part and render; affirm in part; amend; and affirm as amended.

Facts and Procedural History
On 23 February 2002, an accident occurred at the intersection of Filmore and St. Roch Avenues in New Orleans. At the time of the accident, Edwards was riding as a guest passenger in the front seat of Pierre's vehicle. Filmore Avenue is a four-lane street that is divided by a median with two lanes of traffic going in a generally easterly direction on one side of the median and two lanes going in a generally westerly direction on the other side of the median. Additionally, parking lanes exist immediately adjacent to the travel lanes on both sides of Filmore Avenue. No traffic signs are located on either side of the median on Filmore Avenue at its intersection with St. Roch Avenue. St. Roch is a two-way street running in a generally northerly and southerly direction. A stop sign controlling the flow of traffic is located on St. Roch at its intersection with Filmore. At this intersection, by municipal ordinance, Filmore Avenue is designated as the "favored" street, and St. Roch Avenue is the "unfavored" street, thereby giving motorists traveling on Filmore the right-of-way over motorists traveling on St. Roch. Just before the accident, Pierre's vehicle was traveling in a northerly direction on St. Roch towards its intersection with Filmore, while the Hahn vehicle was traveling in a westerly direction on Filmore.[1]
According to Pierre's testimony, she brought her vehicle to a complete stop at St. Roch. After stopping, she claims she looked both ways  "up and down"  Filmore, and saw no cars approaching in either direction. Thereafter, she claims she entered the intersection, not moving any faster than 10 to 15 miles per hour, with the intention of crossing over all four lanes of Filmore and continuing down St. Roch on her way to the grocery store. Further, Pierre admitted that after looking up and down Filmore in both directions at the intersection, she continued looking forward (in the direction she was driving) until the moment of impact with the Hahn vehicle. Specifically, she neither paused nor looked to the right again when she reached the median, prior to entering and crossing the westbound lanes on Filmore. According to Pierre, she crossed the two easterly lanes on Filmore without incident, and continued through the median and into the westbound lanes, when Hahn's car "came out of nowhere" and hit her car traveling at "high power speed." The police who investigated the accident issued Pierre a citation for failing to yield the right of way to the favored street.
The testimony of Edwards corroborates that of Pierre except on one issue. Contrary to Pierre's deposition testimony wherein she stated that she did not stop or look for traffic once her vehicle entered the median at the intersection and that she kept her eyes forward in the direction she was driving, Edwards testified that, not only did Pierre stop at the stop sign, she stopped again when she entered the median and looked in an easterly direction *653 down Filmore for on-coming traffic. It was during the second stop while in the median that Edwards claims to have seen Hahn's car "speeding down Filmore" one block away. Edwards did not warn Pierre about the fast-approaching vehicle.
The trial court found, and the testimony supports, that Hahn took no evasive action; she did not try to warn the Pierre vehicle (i.e., by blowing the horn, flashing lights, etc.) of an imminent collision prior to the accident. Hahn testified that she did not see Pierre's vehicle at any point prior to impact. The only details Hahn recalled regarding the moments leading up to the collision were that she was traveling at or below the posted speed limit, and she was not distracted by her conversation with her mother (one of the now deceased passengers in her car). According to Hahn, the Pierre vehicle "came out of nowhere."
On 20 December 2002, Edwards filed suit against Pierre and State Farm, as Pierre's liability insurer ("State Farm III"), and Hahn and State Farm I, as Hahn's liability insurer. State Farm II was later added as a defendant in its capacity as the underinsured motorist carrier for the Pierre vehicle. Prior to trial, Edwards settled with Pierre and State Farm III, in its capacity as Pierre's liability carrier. Accordingly, this matter proceeded as a bench trial held on 31 July 2007, solely on Edwards' claims against Hahn, State Farm I (as liability carrier for Hahn) and State Farm II (as underinsured motorist carrier of Pierre).
On 29 August 2007, the court issued a judgment in favor of Edwards and against Hahn, State Farm I, and State Farm II, ordering them to pay Edwards $50,000.00 in general damages and $5,874.33 in past medical expenses, plus judicial interest from the date of demand, until paid. The judgment also provided that State Farm be credited with $24,998.48, the total amounts previously paid to Edwards prior to trial as set forth in a stipulation made to the court.[2] No amount was awarded for past lost wages. The judgment did not distinguish between amounts to be paid by State Farm I, as liability carrier for Hahn, and State Farm II, as UM carrier for Pierre.[3]
Motions for new trial were filed by Edwards and State Farm II on 29 August and 10 September 2007, respectively.[4] On *654 3 December 2007, the trial court issued judgment on the motions granting Edwards' motion for new trial and awarding an additional $21,000.00 in past lost wages.[5] The trial court denied State Farm II's motion for new trial. Further, the trial court determined that, based on the credible evidence introduced at trial, the cause of the accident was the sole negligence of Hahn. Otherwise, it appears from the 3 December 2007 judgment that the trial court intended for the $50,000.00 general damage award to remain intact and for the credit to remain in effect.
From both the 29 August 2007 and 3 December 2007 judgments, all parties have appealed.[6] Edwards avers the trial court erred in the following respects: (1) awarding a credit to State Farm for the amount of its judgment against Hahn and State Farm as her liability carrier in the amount of $24,998.48; (2) failing to render a judgment against State Farm, both as liability insurer of Hahn and as UM insurer of Pierre; and (3) awarding Edwards inadequate general damages for two herniated cervical discs. Hahn and State Farm I assert on appeal that the trial court erred in assessing 100% of the fault for the accident to Hahn. State Farm II avers the trial court erred in (1) assessing any fault to Hahn for causing an accident in which she was traveling on the favored street, (2) awarding excessive general damages, and (3) awarding excessive damages for past lost wages. State Farm II further asserts that the trial court did not err in allowing a credit to it as a result of prior payments made to or on behalf of Edwards.

Discussion

Liability of Pierre
Pierre's travel was controlled by a stop sign at the intersection of Filmore and St. Roch Avenue. La. R.S. 32:123 B sets forth the duties of a driver at a stop sign as follows:
B. Except when directed to proceed by a police office or traffic-control signal, every driver and operator of a vehicle approaching an intersection indicated by a stop sign shall stop before entering the cross walk on the near side at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. After having stopped, the driver shall yield the right of way to all vehicles which have entered the intersection from another highway or which are approaching so closely on said highway as to constitute an immediate hazard.[7]
*655 Louisiana courts have consistently held that a driver confronted with a stop sign at an intersection must bring his vehicle to a stop, appraise the traffic, and make sure the way is clear before he enters the intersection. McElroy v. Wilhite, 39,393, p. 3 (La.App. 2 Cir. 5/18/05), 903 So.2d 627, 631. A driver must also look for and then evaluate oncoming traffic before proceeding. Id. at p. 4, 903 So.2d at 631. The duty also includes looking a second time before entering. Id.; see also Continental Ins. Co. v. Duthu, 235 So.2d 182 (La.App. 4 Cir.1970). Moreover, in Louisiana, if a motorist fails to see what he should have seen, the court examines his subsequent conduct on the premise that he did see what he should have seen. Fernandez v. General Motors Corp., 491 So.2d 633, 636-37 (La.1986).
Stopping, therefore, does not fully discharge the duty of a driver negotiating an intersection such as the one presented in the case sub judice. Rather, Pierre had a duty not only to stop at the sign, but to make sure after having stopped that it was safe to proceed further through the median and across the westbound lanes of travel on Filmore. See Klaveness v. Massey, 99-867, p. 4 (La.App. 5 Cir. 2/16/00), 756 So.2d 538, 542. See also Atwood v. State Farm Auto. Ins. Co., 95-454, pp. 3-4 (La. App. 5 Cir. 12/13/95), 666 So.2d 1187, 1190 (duty to keep a proper lookout).
In contrast to the above cited duty of the motorist confronted with a stop sign, the duty of the motorist traveling on the favored street is quite minimal as noted in Fernandez v. Gen. Motors Corp., supra, wherein the Supreme Court stated:
A motorist on a right-of-way street is entitled to assume that motorists on the unfavored street approaching a stop sign will obey the traffic signal and will stop, look and yield the right of way to traffic proceeding on the favored street. Of course, once a right-of-way motorist in the exercise of ordinary vigilance sees that another motorist has failed to yield the right of way, a new duty evolves on the right-of-way motorist to take reasonable steps to avoid an accident if there is time enough to afford him a reasonable opportunity to do so. (Citations omitted.)
Fernandez v. General Motors Corp., 491 So.2d at 636.[8] With regard to the favored motorists' duty, the courts have clarified, noting:
Furthermore, it is only in the exceptional case where the right of way motorist could have avoided the accident by the exercise of the very slightest degree of care that he will be considered guilty of negligence.
*656 See Modica v. Manchester Ins. & Indemn. Co., 284 So.2d 791 (La.App. 4 Cir.1973); McElroy v. Wilhite, 39,393, p. 4 (La.App. 2 Cir. 5/18/05), 903 So.2d 627, 631.
In the case at bar, before entering the intersection of St. Roch and Filmore, Pierre had a duty to come to a complete stop, appraise traffic going both east and westbound on Filmore, and make certain the way was totally clear for her to cross over. Once she crossed over the eastbound lanes of Filmore and entered the median separating the east and westbound lanes of Filmore, Pierre had a duty to look a second time to ensure that no cars were approaching from the west before she proceeded to cross over the westbound lanes. According to Pierre's own testimony, she stopped at the stop sign at the intersection, looked both ways, and saw no cars traveling either east or westbound on Filmore. Pierre then proceeded to cross Filmore's two eastbound lanes, and without stopping or pausing to look again at traffic flowing westbound on Filmore  she testified that she kept her eyes focused forward  drove through the median, and then moved into Filmore's westbound lanes at which time she was struck by the Hahn vehicle. Pierre further testified that she did not see Hahn's vehicle until the moment of impact. Conversely, Edwards testified that, while Pierre's vehicle was in the median, from her guest-passenger position, she was able to see Hahn's vehicle approaching the intersection at a fast rate of speed approximately one block away.
The trial court found Hahn 100% at fault for the accident.[9] Normally, when faced with a factual dispute on appeal, an appellate court cannot disturb the findings of the trial court in the absence of "manifest error" or unless it is "clearly wrong." Stobart v. State, Through Dept. of Transp. & Dev., 617 So.2d 880, 882 (La.1993). However, when a trial court commits legal error, an appellate court is required to review the record de novo. A legal error occurs when a trial court applies incorrect principles of law and those errors are prejudicial such that they materially affect the outcome and deprive a party of substantial rights. Evans v. Lungrin, 97-0541, p. 7 (La.2/6/98), 708 So.2d 731, 735; Tremblay v. Allstate Ins. Co., 05-0956, p. 3 (La.App. 4 Cir. 3/21/07), 955 So.2d 700, 702. We find the trial court committed legal error when it failed to apply the legal principles governing the duty of a motorist crossing an intersection from a nonfavored street whose travel is governed by a stop sign. After reviewing the record evidence and applying the legal principles applicable to the circumstances of this case, we find that Pierre should have seen Hahn's car by the mere fact that her guest passenger did, should have at least paused in the median and continued to look in both directions of traffic to ensure the way was clear to proceed, and is at fault because she did neither. It is because the trial judge did not apply the legal principles enunciated above in considering fault on the part of Pierre that the trial court erred. See Klaveness v. Massey, supra. Accordingly, our review of the evidence in this matter demands a reapportionment of the fault because reasonable persons viewing the evidence could not have found defendant Pierre free from fault.

*657 Apportionment of Fault

Having determined the trial court committed legal error in failing to find Pierre at fault, we re-allocate fault. After an appellate court finds a clearly wrong apportionment of fault, it is required to adjust the award, but only to the highest or lowest point respectively, which is reasonably within the trial court's discretion. Clement v. Frey, 95-1119, pp. 8-9 (La.1/16/96), 666 So.2d 607, 611. See also Toston v. Pardon, 03-1747, p. 17 (La.4/23/04), 874 So.2d 791, 803. Because we conclude the record establishes fault on the part of both Hahn and Pierre, we apply the comparative fault factors announced in Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La. 1985), to re-apportion fault. Using the Watson factors, the court is required to consider the following: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties. Watson, 469 So.2d at 974.
Our application of the Watson factors convinces us that clearly the majority of the fault for the subject accident rests with Pierre. During her testimony, Pierre noted that although she looked both ways before proceeding through the stop sign, she did not see the Hahn vehicle prior to entering the westbound travels lanes. However, her own testimony establishes that she did not keep a proper lookout for oncoming traffic. Instead of looking again for oncoming traffic while she was located in the median of Filmore, she kept her attention focused forward down St. Roch and continued across. Edwards' testimony indicating that she saw the Hahn vehicle approaching the intersection from a block away, albeit at a high rate of speed, shows that the Hahn vehicle was relatively close and should have been fully visible at the time Pierre entered the intersection. Thus, had she looked a second time when in the median, Pierre could have easily seen the Hahn vehicle approaching the intersection. There is simply nothing in the record to explain why Pierre did not see the Hahn vehicle at all except for her inattention before she entered the intersection. As such, we find that it was error by the trial court to conclude that defendant Pierre had no fault for causing the accident at issue. Consequently, we reverse the trial court and apportion 80% of the fault to Pierre for causing the subject accident.
Hahn's duty as the driver on the favored thoroughfare was one of ordinary care toward drivers entering from side streets. Coleman v. Rabon, 561 So.2d 897 (La.App. 2 Cir.1990). However, a motorist entering a favored street is entitled to assume that vehicles traveling on the favored street will obey the speed limit. See Tillman v. Massey, 445 So.2d 749 (La.App. 4 Cir.1984). Conflicting evidence exists in the record as to whether Hahn was traveling at an excessive rate of speed as she approached the intersection. A reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations and reasonable inferences of fact should not be disturbed absent manifest error. Canter v. Koehring Co., 283 So.2d 716 (La.1973). In the case at bar, the trial court credited the *658 testimony of Edwards and Pierre on this issue and determined that Hahn was exceeding the speed limit at the time of the collision. We are required to find no error in this part of the trial court's conclusion of fact, thus requiring apportionment of fault to Hahn.
Additionally, according to Hahn's own testimony, she did not see the Pierre vehicle until the point of impact. We conclude that had Hahn been attentive and keeping a proper lookout she would have seen the Pierre vehicle and may have been able to take precautions to possibly avoid the accident. Because the evidence of record shows that Hahn breached her duty of ordinary care owed to drivers entering from unfavored streets in that she failed to maintain a proper lookout and was traveling at an excessive rate of speed,[10] we agree that Hahn too was at fault in causing the accident.
Based on our analysis of the Watson factors, we conclude that Pierre bears the greater fault for the subject accident. We assess Hahn's fault to 20%, which is the highest amount the trial court could have reasonably allocated to her. We fix Pierre's fault at 80%. See Toston v. Pardon, supra at p. 19, 874 So.2d at 804.

General Damages
Edwards argues the trial court abused its discretion in awarding insufficient damages. Conversely, State Farm II avers the trial court abused its discretion in awarding excessive damages. The Louisiana Supreme Court has set out the rules for review of general damages awards as follows:
The standard for appellate review of general damages awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck v. Stevens, 373 So.2d 498 (La.1979) to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Youn v. Maritime Overseas Corp. 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The reviewing court may then increase or reduce the award only to the lowest or highest award which would have been within the trial court's discretion. Emerson v. Empire Fire and Marine Ins. Co., 393 So.2d 691 (La.1981). Before a trial court's award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the case before it. Reck v. Stevens 373 So.2d 498 (La.1979).
As a result of the accident, Edwards claims to have suffered a herniated disc in her neck with nerve root involvement and headaches. She sought treatment for her injuries over a twenty-month period from two specialists during which time she also underwent physical therapy. No *659 surgery was ever recommended. According to Edwards' trial testimony and pay records introduced into evidence, Edwards remained off work for approximately six months as a result of her injuries from the accident. Medical records indicate that prior to the accident Edwards suffered from pre-existing cervical degenerative disc disease and minor spurring in her lumbar spine for which she underwent treatment by her primary care physician. Additional evidence established that Edwards did not inform the doctors treating her after the subject accident of her pre-existing condition or prior treatment. At trial, Edwards testified that she continues to suffer lingering pain from the cervical disc in her neck, which is supported by the testimony of her treating physicians.[11] At trial, other than the medical records of Edwards' primary care physician showing treatment for a pre-existing condition, the defense presented no expert to refute the findings and conclusions of Edwards' post-accident treating physicians.
The trial court awarded Edwards $50,000.00 in general damages for the injuries she suffered in the accident. Based on the facts and circumstances presented by this case, we cannot say that the trial court its abused vast discretion in making this award. Accordingly, we are required to affirm the trial court's general damage award to plaintiff.

Lost Wages
State Farm II appeals the trial court's award for lost wages in the amount of $21,000.00 as set forth in its second judgment dated 3 December 2007. Specifically, State Farm II avers this amount is excessive based on the evidence presented by Edwards, and should not exceed $6,545.71.
This court consistently applies the manifest error standard to assess the factfinder's conclusions respecting lost wages. Ploger v. Reese, 01-2243, p. 13 (La.App. 4 Cir. 5/22/02), 819 So.2d 1114, 1121. Lost earnings need not be proven in every case with mathematical certainty; however, the law requires such proof as reasonably establishes the claim. This may consist of the plaintiff's own testimony. Id., 01-2243, p. 10, 819 So.2d at 1120. This principle is subject to the caveat that to allow a plaintiff to recover damages for lost wages when there is no independent support of the plaintiff's claim is highly speculative. Id. See also McDonough v. Royal Sonesta, Inc., 93-0183 (La.App. 4 Cir. 10/28/93), 626 So.2d 438, 440.
In the case sub judice, the record shows that at the time of the accident, Edwards was employed by the Orleans Parish School Board as a school teacher at an annual salary of $42,559.02. Edwards testified that she missed six months of work entitling her to lost wages in the amount of $25,200.00, based on a monthly salary of $4,200.00. Based on the trial court's award of $21,000.00, it appears that the trial judge found a gross monthly salary of $4,200.00 and awarded Edwards lost wages for five months.
Edwards contends that her testimony that she missed six months of work at $4,200.00 per month is unrebutted. We disagree. The testimony of Edwards' witness, Lynda McClelland, payroll manager for the Orleans Parish School Board, confirms that, as a school teacher, Edwards would have been paid bi-weekly for ten *660 months, or 20.4 pay periods based on a 10-month period annually; the first pay period commencing in the middle of August and the last pay period ending the first week of June of the following year. Because Edwards would not have worked or received a pay check from 7 June 2002 through 14 August 2002, we find she is not entitled to any lost wages for this time period.[12] Therefore, we must calculate the extent of her lost wages from the time of the accident through the last pay period prior to summer ending on 6 June 2002.[13]
In addition to Ms. McClelland's testimony, Edwards introduced copies of pay stubs issued by the School Board reflecting amounts actually paid to her during the time period following the accident, or from 14 February 2002 to 6 June 2002. According to these records, Edwards was paid on a bi-weekly basis at $34.94 per hour, working an average of 60 hours per week. The records also reflect that Edwards missed the following hours per week during the pertinent pay periods following the accident:

 Pay Period Hours PIP Pay Amount
 14 February 2002-27 February 2002 17.99 $ 2.11 $ 628.61
 28 February 2002-13 March 2002 6.00[14] 7.18 209.64
 14 March 2002-27 March 2002 60.00[15] 71.85 2,096.40
 28 March 2002-10 April 2002 60.00 2,096.40
 11 April 2002-24 April 2002 60.00 2,096.40[16]
 25 April 2002-8 May 2002 60.00 2,096.40
 9 May 2002-22 May 2002 60.00 2,096.40
 23 May 2002-6 June 2002 60.00[17] 71.85 2,096.40
 ______ _______ __________
 Totals 383.99 $152.99 $13,416.65

*661 As evidenced above, based on the pay stubs entered into evidence, at a minimum, Edwards missed 383.99 hours of work following the accident, with a corresponding wage loss of $13,416.65. Additionally, Edwards would be entitled to receive an additional $152.99 for lost Permanent PIP[18] pay bringing her total lost wage claim to $13,569.64.
Based on our review of the record, we agree with State Farm II that the trial judge erred in awarding $21,000.00 in past lost wages as this amount is not supported by the evidence and is clearly excessive. Accordingly, we reduce the trial court's award of $21,000.00 for lost wages to $13,569.64, the highest award which would have been within the trial court's discretion to make based on the record evidence.

Credit to State Farm
Edwards appeals the trial court's issuance of a credit in the amount of $24,988.58 to State Farm. The trial court judgment did not designate which of the State Farm defendants was entitled to the credit. The amount of the credit equals the amounts Edwards received in settlement prior to trial as is stipulated into the trial record as follows: $9,988.58 from State Farm III, Pierre's liability insurer, for Pierre's fault and/or negligence in causing the accident; $5,000.00 made by State Farm II as the UM insurer for Pierre under its medical payment's provision; and, $10,000.00 tendered by GEICO, Edwards' personal UM insurer.
At trial, the only two remaining policies at issue were State Farm I, the liability policy for Hahn, and State Farm II. Under the circumstances of this case, because we find that Pierre was 80% at fault for the accident and State Farm III previously settled with Edwards for the liability of Pierre, any UM coverage afforded by Pierre's State Farm II UM policy would not attach until exhaustion of the limits of Hahn's State Farm I liability policy. Moreover, because the amount owed by Hahn for her percentage of liability in this case, i.e., $13,888.79, clearly does not exceed the $50,000.00 limits of her State Farm I liability policy, we find that Pierre's State Farm II UM policy does not attach to satisfy any portion of the judgment rendered herein.[19]
Accordingly, the issue before us on appeal is whether State Farm I is entitled to a credit for any of the amounts previously received by Edwards in settlement from State Farm II, State Farm III, and/or GEICO, against the portion of the judgment it owes. Under the facts and circumstances presented by this case, we find that State Farm I is not entitled to a credit for any of the amounts previously paid.
*662 The total amount of the judgment, as amended, is $69,443.97:

 General Damages $50,000.00
 Lost Wages 13,569.64
 Past Medicals 5,874.33
 __________
 $69,443.97

In accordance with the 80% of liability we assessed against Pierre, ordinarily Pierre would be responsible for $55,555.18 of the judgment. However, Pierre and State Farm III settled with Edwards for the liability of Pierre in the amount of $9,988.58 of its $10,000.00 policy limit prior to trial. Because Pierre is underinsured for the full amount of the portion of the judgment representing her percentage of fault for the accident, this triggers Edwards' personal UM policy with GEICO for the remaining portion owed by Pierre. Edwards' UM policy totaled $10,000.00, which was previously tendered to Edwards prior to trial. There is no additional insurance available to satisfy the remaining portion of Pierre's liability herein. See Hoefly v. Government Employees Ins. Co., 418 So.2d 575 (La.1982)
In accordance with our assessment of 20% of the fault for the accident to Hahn, her proportionate share of the judgment amounts to $13,888.79, which can easily be satisfied by the $50,000.00 limits of her State Farm I liability policy. As there remains a portion of the judgment not covered by applicable insurance, and there being no double recovery by Edwards, we find no statutory or jurisprudential authority which would allow a tortfeasor, i.e., Hahn, a credit against her own proportionate share of the fault by the amounts paid by either Edwards' UM insurer or Pierre's liability insurer under the facts and circumstances presented by this case.
Additionally, Edwards received $5,000.00 from State Farm II (Pierre's UM policy) under its medical payments coverage. A credit for medical expenses is enforceable only insofar as it prevents recovery of the same medical expenses under both the UM coverage and medical payments coverage. Johnson v. Jackson, 504 So.2d 88, 93 (La.App. 2 Cir. 1987). Moreover, according to the jurisprudence, where a plaintiff's total damages do not exceed the UM policy limits, and the language of the policy allows for such, the UM carrier, is entitled to a credit for any amount which it has paid the plaintiff under the medical payments coverage of its policy. See Sutton v. Oncale, 99-967, p. 9 (La.App. 5 Cir. 3/29/00), 765 So.2d 1072, 1077. Thus, while State Farm II may have been entitled to a credit for the amounts it previously paid under its medical payments provision had its policy attached in this case, we find that no credit is available to Hahn, as tortfeasor, or State Farm I, her liability insurer, for purposes of reducing their proportionate share of the judgment payable herein. For these reasons, we reverse that portion of the trial court's judgment giving State Farm a credit in the amount of $24,988.58.

CONCLUSION
For the foregoing reasons, we reverse the trial court judgment in part, render in part, amend in part, and affirm as amended.
REVERSED IN PART; RENDERED IN PART; AFFIRMED IN PART; AMENDED IN PART; AFFIRMED AS AMENDED.
NOTES
[1] Two passengers were riding in the Hahn vehicle at the time of the accident, but both died prior to trial from causes unrelated to the accident.
[2] On the morning of trial, the parties stipulated that Edwards had previously received: $9,988.48 of the $10,000.00 policy limit from State Farm III in its capacity as liability insurer for Pierre; $10,000.00 policy limits from GEICO, in its capacity as Edwards' personal underinsured motorist carrier; and, $5,000.00 policy limits from State Farm as the medical payments insurer of the Pierre vehicle.
[3] The judgment did not set forth an allocation of fault, or any apportionment thereof, as between Hahn and Pierre in causing the accident. Reasons for judgment were not assigned.
[4] Edwards' motion for new trial asserted a clerical error in the judgment in that it was rendered against the wrong State Farm entity (State Farm Fire and Casualty Company rather than State Farm Mutual Automobile Insurance Company). Edwards further asserted that the judgment failed to set forth an award for past lost wages, which was contrary to the evidence adduced at trial. Lastly, Edwards alleged that State Farm I was not entitled to any credit for amounts previously paid to her, and that State Farm II was only entitled to a credit for the $9,988.48 and $5,000.00 previously paid to her by State Farm III as the liability insurer for the Pierre vehicle. In its motion for new trial, State Farm II asserted that the trial court erred in casting it in judgment based on the fact that the court's award, less the credit provided, falls within the limits of State Farm I's liability policy, and thus, State Farm II's UM policy is not triggered. State Farm II further argued that the trial court erred in assessing Hahn with sole responsibility for causing the accident.
[5] The trial court further corrected the judgment to reflect the correct the name of the State Farm entity to State Farm Mutual Automobile Insurance Company.
[6] Edwards timely filed a motion and order for devolutive appeal on 13 December 2007. Defendants Hahn and State Farm I filed a motion and order for suspensive appeal on 12 December 2007. Defendant State Farm II filed a motion and order for suspensive appeal on 3 January 2007.
[7] In support of her position that the trial judge did not err in her finding of no fault on the part of Pierre, Edwards asserts that the Pierre vehicle had pre-empted the intersection at the time of the collision. In Tillman v. Massey, 445 So.2d 749, 752 (La.App. 4 Cir. 1984), this court concluded that "[t]he doctrine of pre-emption has a two-fold effect; it frees the pre-empting party of any negligence and it imposes negligence on the party against whom it is claimed." Additionally, "[i]n order for the doctrine of pre-emption to apply to a motorist who has entered the intersection before the traversing vehicle, the one seeking to invoke the doctrine must show that he entered the intersection . . . sufficiently in advance of the vehicle on the intersecting street to permit him to cross without requiring an emergency stop by the other vehicle." Id. Thus, Edwards argues that because Pierre stopped at the stop sign, determined that it was safe to cross, and then proceeded into the intersection prior to the Hahn vehicle, the doctrine of pre-emption applies. However, Pierre's own testimony does not support the argument that she pre-empted the intersection. First, Pierre testified that, while she came to a complete stop at the stop sign prior to crossing over the eastbound lanes of Filmore, she did not stop, or even pause, once she entered the median and proceeded to cross the westbound lanes of Filmore. Next, Pierre testified that she did not see the Hahn vehicle until just prior to impact, though there were no obstructions to her visibility at the intersection. Based on this testimony, we are required to find because no evidence exists to the contrary, even through implication, that Pierre pre-empted the intersection.
[8] As noted by the Supreme Court in Bourgeois v. Francois, 245 La. 875, 161 So.2d 750 (1964), if a right-of-way motorist cannot assume that a traffic signal will be obeyed, then traffic signals cease to be safety signals and become traffic traps. To require a motorist on a right-of-way street to be so cautious as to slow down at every intersection would cause traffic in a metropolitan area to proceed at a virtual standstill.
[9] Specifically, the trial judge found that Hahn was traveling at a high rate of speed and, in addition, breached her duty to keep a proper lookout as she should have been able to see Pierre's car as she entered the intersection. The trial judge further determined that Hahn had the last opportunity to avoid the accident, and her failure to do so amounted to negligence.
[10] See Elliott v. U.S. Fidelity & Guaranty Co., 568 So.2d 155, 160 (La.App. 2 Cir. 1990).
[11] Edwards's primary care physician who treated her for her pre-existing degenerative disc disease, but did not treat her for the injuries she received in the subject accident, is of the impression that Edwards suffers from arthritis. Edwards asserts that her continued neck pain is a result of the accident. Of course, Edwards is not a physician and cannot know the medical reason for her pain.
[12] Pursuant to La. R.S. 17:81 A(1) each parish school board has the authority to employ teachers by the month or by the year. The Orleans Parish School Board employs their teachers by the month, for a total of 10 months per school year. See Gayle v. Porter, 239 So.2d 739, 741 (La.App. 4 Cir. 1970).
[13] The pay-stub records submitted into evidence establish that when the 2002-2003 school year commenced in August 2003, six months following the accident, Edwards was working 60 hours per week at that time.
[14] The pay stub for this pay period reflects that Edwards entered 54 hours of time and there is no indication that she used any emergency or holiday pay, or extended sick leave time. Based on her trial testimony, coupled with pay stubs indicating her pay was based upon a 60-hour work week, the trial court could have determined that Edwards lost 6 hours of time this week.
[15] The pay stub for this two-week pay period indicates that Edwards did not submit any hours worked, but rather, used 48 hours of extended sick leave time and was compensated based on same. There is no indication that she used any emergency or holiday pay during this pay period. However, based on her trial testimony that she was unable to work at all during this time due to her injuries, we find she would have been entitled to compensation for the full 60 hours.
[16] There is no pay stub included in the record for the pay period extending from 11 April 2002 through 24 April 2002, however, the records show that Edwards missed 60 hours of work the preceding pay period and 60 hours for the two pay periods thereafter. We presume, based upon Edwards's testimony, that had the check stub for this pay period been submitted, it would indicate that Edwards missed 60 hours of work during this pay period as well.
[17] During this two-week pay period, the pay stub indicates that Edwards actually only took 18 hours of extended sick leave. There is no indication on the pay stub itself that she used any emergency or holiday pay, nor is it clear whether she had exhausted her emergency, holiday, or extended sick leave pay at this time. However, based on her trial testimony, we presume that Edwards did, in fact, exhaust her emergency, holiday, and/or extended sick leave pay and award her lost income based on 60 hours of lost time for this pay period.
[18] The Professional Improvement Program, or "PIP," is a program designed by the Louisiana legislature to encourage teachers to take courses and engage in educational pursuits for the purpose of professional improvement. Teachers participating in the program are given a salary supplement. See State, Through the Louisiana Dept. of Education v. McVay, 93-873 (La.App. 5 Cir. 3/16/94), 635 So.2d 1192, 1193. According to Edwards' employment records, she was entitled to receive Permanent PIP in the amount of $71.85 per pay period as a supplement to her regularly salary.
[19] The only way the UM policy of Pierre (State Farm II) would attach in this case is if Hahn were deemed 100% at fault for the accident, and only then if the limits of Hahn's liability policy (State Farm I) were insufficient to satisfy the judgment. See Boudreaux v. Colonial Lloyd's Insurance Company, 633 So.2d 682, 685 (La.App. 1 Cir.1993).