CHARLES R. JONES, Judge.
 

 | ,The Appellant, Philip Bell, seeks review of the district court’s judgment in favor of the Appellee, Dr. Charles Glaser, sustaining his exception of prescription. We affirm.
 

 On February 19, 1993, Mr. Bell entered into a sublease for commercial property with Dr. Glaser for a Mail Boxes, Etc. franchise at 630 South Carrollton Avenue in Orleans Parish. The owner of the building was Slatten Realty Company (hereinafter referred to as “Slatten”), which leased the building to Dr. Glaser for a period of 15 years: April 1,1985 through March 31, 2000. The original sublease to Mr. Bell was for the term of March 1,1993 to March 1, 1994, with two options to extend for either a three year period or another year.
 

 The Primary Lease terms between Slat-ten and Dr. Glaser regarding roof repair were:
 

 ...
 
 Lessee assumes responsibility for the condition of the premises and Lessor will not be responsible for damage caused by leaks in the roof by bursting pipes, by freezing or otherwise, or by any vice or defects of the leased property, or the consequences thereof
 
 except in the case of positive neglect or failure to take action toward the remedying of such defects within reasonable time after having received written notice from Lessee of such defects and the damage caused thereby. Should Lessee fail to promptly notify Lessor, in writing of any such | .¿defects, Lessee will become responsible for any damage resulting to Lessor or other parties. [Emphasis added.]
 

 The addendum to the Primary Lease regarding roof repairs and the sublease provides:
 

 (1) Lessee agrees to do all interior and exterior renovations and improvements at his own expense
 
 except for roof repairs.
 

 (2) Lessee agrees to maintain all leased areas set forth in this lease, both interior and exterior,
 
 excluding roof maintenance and repairs.
 

 (3) Lessee to be granted the right to sublease, but will remain liable for lease if sub-lessee becomes unable to pay his rent. [Emphasis Added].
 

 Lastly, the sublease terms between Dr. Glaser and Mr. Bell states in pertinent part:
 

 7. This is a sublease of the above-described property, covered by primary lease from April 1, 1985 through March 31, 2000, dated March 26, 1985, a copy of which is attached hereto, and
 
 all of the terms and provisions of said primary lease are incorporated in and shall be considered a part of this sublease to the extent applicable
 
 and where not inconsistent with the terms and provisions of this sublease, except that sublessee’s rights or renewal shall be specified in Paragraph 8 of this sublease. [Emphasis Added].
 

 8(d). Sublessee shall have the right, with one hundred twenty (120) days pri- or to written notice, to extend this lease
 
 *516
 
 for an additional 2 terms: commencing immediately upon the expiration of the primary term and first option provided above and ending March 31, 2000, upon the same terms and conditions, including rental increase on the same schedule as during the primary term.
 
 The [sic] first option period is a term of three years
 
 and the [sic] second option period ends March 31, 2000. [Emphasis Added].
 

 |sMr. Bell extended the lease for an additional three (3) years through March 1, 1997. He had the only Mail Boxes, Etc. franchise in the area from Birmingham, Alabama to Houston, Texas. Since Mr. Bell had an exclusive franchise,.he had the right to share in the royalties of all franchises in the area so long as he provided a training center (which he provided) at the Carrollton location.
 

 In the fall of 1994, after extending the lease through 1997, Mr. Bell noticed water intrusion in the ceiling in the rear bathroom portion
 
 of
 
 the building. In November 1994, a water leak appeared again. This time the leak occurred in the administrative offices of the building causing damage to the carpet, countertops and desks. One month later in December 1994, more water leaking occurred, causing damage to the mid-section of the building, carpet, countertops, and desks. In February 1995, water began leaking from the ceiling again through light fixtures. Due to the ongoing leaking, Mr. Bell sent a letter on March 10, 1995, describing the damages suffered and the costs of repairs already undertaken. The letter noted damages to copy equipment, cabinets, etc. A total of $8,053.86 in damages was sought.
 

 On April 28, 1995, Mr. Bell sent a second letter to Dr. Glaser giving him notice that he was going to terminate his lease effective May 30, 1995. On May 9, 1995, the business again experienced flooding from the roof. This time the damage was widespread, and led Mr. Bell to write another letter to Dr. Glaser that same month. In addition to major problems, the letter noted that the building was uninhabitable for the purpose for which it was leased. It follows that as of May 30, 1995, the lease was cancelled at Mr. Bell’s request and all contractual relations between both parties ceased. Subsequently, Mr. Bell brought suit against Dr. Glaser in 1999; however, the suit was legally abandoned.
 

 |4On July 29, 2005, Mr. Bell filed another suit against Dr. Glaser, this one for breach of the sublease and to recover damages. Dr. Glaser filed an Exception of Prescription arguing that Mr. Bell’s claims accrued greater than ten years earlier. The district court granted the exception of prescription, and this timely appeal followed.
 

 Mr. Bell argues on appeal that the district court erred in sustaining Dr. Glaser’s exception of prescription and dismissing his suit.
 

 An appellate court cannot disturb the factual findings of the district court in the absence of “manifest error” or unless it is “clearly wrong.”
 
 Stobart v. State, Through Dept. of Transp. & Dev.,
 
 617 So.2d 880, 882 (La.1993). However when a trial court commits legal error, an appellate court is required to review the record
 
 de novo. Edwards v. Pierre,
 
 08-0177 (La.App. 4 Cir. 9/17/08), 994 So.2d 648, 656. Prescription is a purely factual determination. Thus, the standard of review on an exception to prescription is manifest error.
 
 Katz v. Allstate Ins. Co.,
 
 2004-1133 (La.App. 4 Cir. 2/2/05), 917 So.2d 443;
 
 Parker v. B & K Const. Co., Inc.,
 
 2006-1465 (La.App. 4 Cir. 6/27/07), 962 So.2d 484.
 

 In his lone assignment of error, Mr. Bell alleges that the prescriptive period did not begin to run until August 1995, at the termination of the sublease and
 
 *517
 
 when he permanently moved out of the building. He asserts that the ongoing physical damages and consequential economic damages caused by defects in the leased premises are within the ten year prescription period; therefore, the prescriptive period for any of the more recent damages has not run. He also asserts that the ongoing damages should be treated similarly to a continuing tort where prescription does not begin until the damage-causing conduct ends.
 

 ^Prescription begins to run when it is determined that damage was sustained.
 
 Landry v. Blaise Inc.,
 
 2002-0822, p. 4 (La.App. 4 Cir. 10/23/02), 829 So.2d 661, 664. Damage is sustained for the purposes of prescription when it has manifested itself with sufficient certainty to support the accrual of a cause of action.
 
 Id.,
 
 p. 5, 829 So.2d at 665;
 
 Hazelwood Farm Inc. v. Liberty Oil and Gas Corp.,
 
 2002-266 (La.App. 3 Cir. 4/2/03), 844 So.2d 380, 389. Where a claimant has suffered some but not all damages, prescription runs from the day on which he suffered actual and appreciable damages even though he may thereafter realize more precise damages.
 
 Hazelwood,
 
 at 389;
 
 Haney v. Dixie Graphics, Inc.
 
 (La.1/17/92), 593 So.2d 351, 354. Thus, even where there are ongoing damages, prescription does not run from each incident of damages; rather, it runs from the day that actual and appreciable damages were noticed or suffered by the claimant.
 

 Our review of the record indicates that Mr. Bell had first-hand knowledge of actual and appreciable damages as early as the fall 1994, and undoubtedly by May 1995. His letter to Dr. Glaser in May 1995, noting that the building was uninhabitable for the purpose for which it was leased along with the widespread damage from the flooding of the roof, provided notice of actual physical and appreciable damages. Prescription began to toll from May 1995. Since Mr. Bell did not file suit within the requisite prescription period of ten years, his cause of action prescribed. Therefore, we find that this assignment of error is without merit.
 

 DECREE
 

 For the foregoing reasons, the judgment of the district court granting the Exception of Prescription in favor of Dr. Charles Glaser is affirmed.
 

 AFFIRMED.